MARKETING AND BROKERAGE SPECIALISTS, INC., ETC., demandantes-peticionarios, *v.* DEPARTAMENTO DE AGRICULTURA Y SU SECRETARIO INTERINO, ETC., demandados-recurridos.

Número: O-84-82     Resuelto: 24 de febrero de 1987

320

*Eric A. Tulla* y *Sonsire Ramos Soler,* de *Rivera, Tulla & Ferrer,* abogados de la peticionaria; *Isabel López Bras* y *Eliezer Al-*

*darondo Ortiz,* de *Aldarondo & López Bras,* abogados de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

I

El 19 de enero de 1983 el Administrador de la Oficina de Reglamentación de la Industria Lechera (ORIL) promulgó el Reglamento Número 2 de la Industria Lechera, que entró en vigor el 5 de marzo de 1983. Dicha disposición tiene el propósito de reglamentar la leche UHT([1]) y leche esterilizada([2]) que se importa y vende en Puerto Rico. El reglamento faculta al Administrador de la ORIL a fijar el precio máximo, la rotulación, el tamaño de envase y la ubicación en el negocio de productos UHT y leche esterilizada, además de regir la importación, la venta, la producción, el mercadeo y la distribución de este tipo de leche. La Sec. 5 dispone que toda persona que interese importar, vender o distribuir leche UHT en Puerto Rico deberá obtener licencia del Administrador de la ORIL. Cuando se aprobó este reglamento, la leche UHT y esterilizada que se vendía en los establecimientos comerciales era importada.

El 21 de marzo de 1983 la Marketing and Brokerage Specialists, Inc., corporación dedicada a la importación y distribución de leche UHT, marca *Grand Pré,* elaborada en Canadá, presentó ante el Tribunal Superior de Puerto Rico, Sala de San Juan, Solicitud de Revisión de Reglamento Administra-

---

([1])Ésta se define por el Reglamento Núm. 2 de la Industria Lechera, Sec. 4(b)(1) como "[l]eche o producto de leche que se somete a una temperatura sobre el punto de ebullición de la misma y a presión por espacio de algunos segundos para destruir los microorganismos que pueden dañar el producto". Anejo D, pág. 114.

([2])El citado reglamento define este producto como "[l]eche que se somete a una temperatura lo suficientemente alta por un tiempo lo suficientemente largo como para asegurar un producto libre de microorganismos y se envasa bajo condiciones asépticas". Reglamento Núm. 2, Sec. 4(b)(2). Anejo D, pág. 114.

tivo contra el Reglamento Núm. 2 mencionado. Alegó, en síntesis, que el reglamento promulgado por la ORIL era discriminatorio e irrazonable contra los importadores y los vendedores de la leche UHT; que violaba los derechos de la peticionaria al debido proceso de ley y a la igual protección de las leyes consagrados en la Constitución del Estado Libre Asociado de Puerto Rico; que dicho reglamento violaba la Cláusula de Comercio Interestatal de la Constitución de Estados Unidos de América; que la ORIL excedió sus poderes estatutarios al promulgar en su Reglamento Núm. 2 el requisito de licencia y al prohibirles vender sus productos en los envases que utilizan los productores de la leche fresca en Puerto Rico para la venta de su producto, y que no existe evidencia sustancial en el récord de las vistas administrativas efectuadas que sostengan la promulgación del reglamento.

La Sala de San Juan del Tribunal Superior determinó, tras un análisis de la Cláusula de Comercio federal y la Cláusula de Igual Protección de las Leyes de la Constitución del Estado Libre Asociado, que la reglamentación era válida al palio del poder de razón de estado (*police power*), que conlleva velar por la salud y el bienestar general de la ciudadanía. Además concluyó que, bajo el criterio tradicional de racionalidad que rige toda clasificación económica, la reglamentación en controversia perseguía proteger la estabilidad de la Industria Lechera en beneficio de los intereses del público consumidor. Habiéndose seguido el procedimiento de vistas públicas establecido por ley para considerar válido un reglamento administrativo, el tribunal de instancia resolvió que no se violentaron los derechos de la parte recurrente al amparo de la Cláusula de Comercio federal, como tampoco hubo transgresión a sus derechos bajo las disposiciones constitucionales del debido proceso de ley e igual protección de la leyes de la Constitución de Puerto Rico. Concluyó que el Reglamento Núm. 2 de la ORIL es válido.

Acudió ante nos la peticionaria, mediante solicitud de *certiorari*, el 6 de febrero de 1984. Expedimos el mandamiento de *certiorari* al tribunal de instancia el 1 de marzo de 1984. Tras estudiar las alegaciones de las partes, procedemos a confirmar la sentencia de instancia.

Las controversias planteadas ante nos son las siguientes:

(1) Si el Administrador de la Oficina de Reglamentación de la Industria Lechera se excedió en el ejercicio de sus poderes al amparo de la Ley Núm. 34 de 11 de junio de 1957 (5 L.P.R.A. sec. 1092 y ss.) al promulgar el Reglamento para la leche UHT,

(2) Si el susodicho Reglamento de la Industria Lechera vulnera la doctrina de la igual protección de las leyes, de la Constitución del Estado Libre Asociado, Art. II, Sec. 7, y

(3) Si el Reglamento Núm. 2 viola las disposiciones de la Cláusula de Comercio de la Constitución de Estados Unidos, Art. I, Sec. 8, Cl. 3.

## II

La función del gobierno durante este siglo se ha transformado de una entidad pasiva que rendía ciertos servicios, a una muy activa que realiza una multiplicidad de actividades. Actualmente regula la conducta privada en una variedad de fases: impone contribuciones, concede distintos tipos de beneficios económicos como subsidios, viviendas u otros bienes, y provee los servicios tradicionales como seguridad, educación y salud. Para que el estado moderno cumpla cabalmente con sus responsabilidades, la Asamblea Legislativa ha delegado extensamente poderes tanto cuasi legislativos como cuasi judiciales a las agencias administrativas. Así se originó lo que se ha considerado uno de los más importantes y novedosos desarrollos del gobierno moderno: la reglamentación administrativa. Véanse: 1 *Davis, Administrative Law Treatise* Sec. 6.1, pág. 448 (2da ed. 1978), y S. G. Breyer & R. B. Stewart, *Ad-*

*ministrative Law and Regulatory Policy, Problems, Test, and Cases,* 2da ed., Boston, Little, Brown & Co., 1985, págs. 1–40.

■ Por la complejidad del mandato otorgado a estas agencias administrativas ha sido necesario que la Rama Legislativa les delegue poderes con normas amplias y generales permitiéndoles una gran discreción en el desarrollo y ejecución de la política pública. *López v. Junta Planificación,* 80 D.P.R. 646, 661 (1958).

■ Aunque en otras épocas ese tipo de delegación no fue permitida, *Schechter Corp. v. United States,* 295 U.S. 495 (1935); *Panama Refining Co. v. Ryan,* 293 U.S. 388 (1935), actualmente no se cuestiona la facultad de delegar el poder de reglamentación bajo criterios amplios. *López v. Junta Planificación,* supra; *Amalgamated Meat Cutters & Butcher Work v. Conally,* 337 F. Supp. 737 (D.C. Cal. 1971).

■ No obstante, lo que actualmente se requiere como medida fiscalizadora es que las agencias aprueben reglamentos que delimiten o precisen sus facultades al amparo de la ley y así evitar actuaciones ilegales o arbitrarias. La función de los tribunales generalmente ha de ir dirigida a evaluar: (1) si la actuación administrativa está autorizada por la ley; (2) si se delegó poder de reglamentación; (3) si la reglamentación promulgada está dentro de los amplios poderes delegados; (4) si al aprobarse el reglamento se cumplió con las normas procesales de la ley orgánica y de las leyes especiales, y (5) si la reglamentación es arbitraria o caprichosa. *Cf. Motor Vehicle Mfrs. Assn. v. State Farm Mut.,* 463 U.S. 29 (1983).

La parte recurrente alega ante nos que la ORIL, creada mediante la Ley Núm. 34 de 11 de junio de 1957 (5 L.P.R.A. sec. 1092 y ss.), se estableció exclusivamente para "s[ervir] de árbitro entre los productores locales de leche y los elaboradores locales de la misma". (Anejo C, pág. 23.) Sostiene, por lo tanto, que la ORIL carece de poder para reglamentar la

importación de leche, siendo cualquier actuación en ese campo *ultra vires.*

█  No le asiste la razón. La citada ley faculta al Secretario de Agricultura a nombrar un administrador de la Oficina de Reglamentación de la Industria Lechera, 5 L.P.R.A. sec. 1093. Los poderes del Administrador de la ORIL, pormenorizados en el Art. 5 (5 L.P.R.A. sec. 1096), son abarcadores. En lo que respecta a la Industria Lechera, se dispone entre otros los siguientes:

*Poderes y deberes del Administrador*

(a)  Poderes generales: El Administrador tendrá el poder de investigar y reglamentar *todas las fases de la industria de la leche y los productos derivados de ésta,* en el Estado Libre Asociado, *incluyendo* la producción, elaboración, esterilización, manufactura, *almacenaje, compra y venta, transportación y distribución del producto principal y sus derivados.*

(b)  ... (3)  Desarrollar y mantener *condiciones satisfactorias de mercadeo* tendientes a proteger la *producción y distribución de la leche y los productos derivados* de ésta.

.    .    .    .    .    .    .    .    .

(5)  Establecer *normas de elaboración,* esterilización, clasificación, *empaque, envase, enlatado, rotulación, calidad y presentación de la leche y de sus productos derivados.*

.    .    .    .    .    .    .    .    .

(7)  Evitar *prácticas monopolizadoras* y de *competencia desleal,* así como discrímenes en las diversas fases de la industria desde la producción hasta la *venta* de la leche o de sus *productos derivados* al consumidor. [3]  (Énfasis suplido.) 5 L.P.R.A. sec. 1096.

---

[3] Dicha disposición de ley concede, además, las siguientes facultades:

"(8)  Establecer requisitos para la expedición, y renovación de licencias así como los motivos de suspensión o cancelación de las mismas, de acuerdo a lo dispuesto en otras partes de dichas secciones.

"(9)  Investigar las transacciones y relaciones comerciales de los productores, elaboradores, esterilizadores y detallistas entre sí, así como las de cualesquiera de ellos con los consumidores.

■ Alega la recurrente que la ORIL tiene facultad sólo para regular la industria de la leche fresca y que el Reglamento Núm. 2 regula un producto que no es "leche fresca". Apoya su teoría en la definición de "leche fresca" que contiene la ley en su Art. 1 (5 L.P.R.A. sec. 1092). No tiene razón la recurrente. Aunque es correcto que la ley en su Art. 1 define la leche fresca como aquella "[l]eche en su estado natural, ya sea cruda, pasteurizada y homogen[e]izada, que se expende para consumo directo al público", y que el producto de la recurrente no es leche fresca, *los poderes de la ORIL no se limitan a la leche fresca*. Los artículos de la ley anteriormente transcritos tratan sobre los poderes de la ORIL para regular la "industria de la leche". En ningún lugar se limitan los poderes del Administrador a reglamentar sólo la "leche fresca".

■ De lo anteriormente expuesto se puede claramente concluir que la ORIL no fue creada sencillamente para servir de árbitro entre los distintos componentes de la Industria Lechera. La intención fue crear un organismo con amplios poderes de reglamentación sobre la leche y sus productos deriva-

---

"(10) Celebrar las audiencias públicas que requieren dichas secciones y las demás que considere necesarias para poner en efecto la política pública y los fines de las mismas.

"(11) Requerir de las personas que operan *negocios dentro de la industria de la leche* y sus *productos derivados* que lleven los récords e historiales y formularios y rindan los informes que el Administrador considere necesarios para efectuar la política pública y los fines de dichas secciones.

"(12) Establecer sistemas o fórmulas de pago o liquidación a los productores. A tal efecto, el Administrador tiene autoridad para establecer diferencias en la reglamentación a base de distancias entre las áreas de producción y la localización de las plantas elaboradoras de la leche producida.

"(13) Preparar estadísticas y diseminar toda la información útil respecto a la operación y desarrollo de la industria de leche y sus productos derivados.

"(c) En el ejercicio de los poderes concedidos en esta sección y en las otras disposiciones de las secs. 1092 a 1118 de este título, el Administrador queda expresamente autorizado para tomar todas las medidas pertinentes para hacer efectivas las disposiciones de las mismas." (Énfasis suplido.)

dos. (⁴) Persigue proteger a los consumidores brindándoles leche de buena calidad y a precios justos. A la vez, pretende evitar que se lleven a cabo prácticas comerciales que engañen al consumidor y afecten el consumo de este producto tan importante en nuestra economía agroindustrial. La Industria Lechera es uno de los principales sectores en la economía agrícola-industrial.

Aunque los recurrentes alegan que su producto no es "leche fresca", según lo define el inciso (h) del Art. 1 (5 L.P.R.A. sec. 1092(h)), no pueden negar que la leche *Grand Pré* ha sido descrita en la literatura promocional de los recurrentes como leche de vaca:

> Grand Pré es sencillamente una leche de vaca buena, saludable, parcialmente despumada que contiene 2% de materias grasas lácteas. Pero mejoramientos en el procedimiento convencional de pasteurizar leche eliminando toda actividad bacteriológica, facilidades que permiten un embalaje perfectamente aséptico y un evase que protege a la leche del aire y la luz permite que Grand Pré permanezca fresca por muchas semanas, sin refrigeración. Grand Pré no ha sufrido ningún tratamiento químico y no contiene preservativo químico alguno para asegurar larga vida de almacenamiento. Se le ha[n] agregado solamente vitaminas A y D.
>
> Grand Pré es manufacturada de leche certificada por el gobierno como una leche de primera clase . . . .
>
> .　　.　　.　　.　　.　　.　　.　　.
>
> Finalmente, una leche saludable que permanecerá fresca por muchas semanas sin refrigeración.

---

(⁴) La ley establece una norma de interpretación liberal:

"Las secs. 1092 a 1118 de este título se interpretarán liberalmente a favor de la autoridad del Administrador para reglamentar la industria de la leche y sus productos derivados a los efectos de poner en vigor la política pública y los fines de dichas secciones.

"A ese efecto, podrá el Administrador formular y adoptar los planes y medidas necesarias para hacer frente a las variaciones y condiciones cambiantes de la industria, todo ello a los efectos de proteger el interés general y la política pública." 5 L.P.R.A. sec. 1116.

. . . . . . . .

Primera leche natural de larga conservación SIN REFRIGE-RACIÓN puesta a punto en América del Norte.

. . . . . . . .

*No es* condensada, *no es* concentrada, *no se* le han añadido agentes de conservación. Es una leche natural con la consistencia y el sabor de la leche pasteurizada. (Énfasis del original.) Anejo D, págs. 118, 119 y 120.

■ Ante este cuadro fáctico no se puede válidamente cuestionar que la *Grand Pré* es "leche o un producto derivado de ésta" cuya distribución y venta en Puerto Rico puede ser reglamentada por el Administrador de la ORIL, dentro del marco de sus poderes. Véanse: *P.S.P.* v. *Com. Estatal de Elecciones*, 110 D.P.R. 400, 409 (1980); *Infante* v. *Tribl. Examinador Médicos*, 84 D.P.R. 308, 314 n. 5 (1961); *Ex parte Irizarry*, 66 D.P.R. 672, 676 (1946); B. Schwartz, *Administrative Law*, 2da ed., Boston, Little, Brown & Co., 1984, pág. 153.

### III

La parte demandante peticionaria alega que el reglamento no es válido toda vez que no existe evidencia sustancial en el récord de las vistas administrativas que sostengan la promulgación del mismo. Esta alegación no es correcta en derecho.

■ Para que un reglamento sea válido es necesario que también cumpla con el procedimiento estatutario establecido para su promulgación. El Art. 12 de la Ley para Reglamentar la Industria Lechera, 5 L.P.R.A. sec. 1103, en lo pertinente establece:

(b) La aprobación de cualquier reglamento se hará previa audiencia pública a celebrarse ante el Administrador o un agente suyo, en la que podrá participar toda persona interesada. La celebración de la audiencia con el fin expresado en este inciso se anunciará en un periódico de general circula-

ción del Estado Libre Asociado con no menos de cinco (5) días de anticipación a la fecha seleccionada.

(c) Los reglamentos así aprobados tendrán vigencia a partir de la fecha en que se anuncie la aprobación de los mismos diciendo dónde y cómo se pueden conseguir copias de los mismos.

La audiencia pública que requiere la Ley Núm. 34 se celebró el 14 de octubre de 1982 en los salones de la Biblioteca de la Estación Experimental Agrícola de Puerto Rico. A ella acudieron a deponer representantes de la firma peticionaria, Marketing and Brokerage Specialists, Inc., representantes de la firma Dairymen, Inc., importadores de la leche UHT Farm Best, miembros de la Asociación de Productores de Leche de Puerto Rico, y de la Asociación de Agricultores de Puerto Rico.

■ Los procedimientos y las decisiones ante un organismo administrativo tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que la impugne no produzca suficiente evidencia para derrotarla. *Murphy Bernabe* v. *Tribunal Superior*, 103 D.P.R. 692, 699 (1975); *South P.R. Sugar Co.* v. *Junta Azucarera*, 83 D.P.R. 406, 409 (1961); *Monllor & Boscio* v. *Comisión Industrial*, 89 D.P.R. 397, 405 (1963); *Arroyo Merino* v. *Junta Azucarera*, 89 D.P.R. 622, 630 (1963); *A.D.C.V.P.* v. *Tribunal Superior*, 101 D.P.R. 875, 880 (1974). Nada ha aducido ante nos la peticionaria, que derrote esta presunción.

De las ponencias presentadas en las vistas públicas surge la existencia de suficiente evidencia en el récord para razonablemente sostener la promulgación del reglamento. Véase J. J. O'Reilly, *Administrative Rulemaking, Structuring, Opposing, and Defending Federal Agency Regulations*, Colorado Springs, Ed. Shepard's, McGraw-Hill, 1983, págs. 298–300. La preocupación sobre el efecto que tendría la no reglamentación estatal sobre la introducción de la leche UHT en Puerto Rico, su impacto sobre la Industria Lechera, así como la injusticia

que surgiría de aplicarle a los productores, elaboradores, esterilizadores y distribuidores de leche fresca la reglamentación existente y no a los distribuidores de leche UHT, fueron los motivos esbozados por los comparecientes a las vistas públicas celebradas para discutir la aprobación del reglamento impugnado. Estas manifestaciones demostraron claramente la necesidad de reglamentar este producto derivado de la leche para así "mantener la estabilidad de la industria lechera y ... proteger al público consumidor". Propósitos del Reglamento. Reglamento Núm. 2, Sec. 3. Anejo D, pág. 113.

Resolvemos que el reglamento impugnado tiene fuerza de ley por haber sido promulgado a tenor con las disposiciones de la Ley para Reglamentar la Industria Lechera y por haber cumplido con el trámite procesal requerido para su validez. ([5])

## IV

Alega la recurrente que el reglamento impugnado viola la Cláusula Constitucional de Igual Protección de las Leyes. Es menester una breve exégesis sobre esta cláusula de la Constitución de Puerto Rico, Art. II, Sec. 7, Const. E.L.A., L.P.R.A., Vol. 1, ed. 1982, pág. 275. Las normas que nutren este principio constitucional no exigen un trato igual para todos los ciudadanos, pero prohíben un trato desigual injustificado. El problema consiste en dictaminar cuándo la clasificación es razonable o no. *Zachry International* v. *Tribunal Superior*, 104 D.P.R. 267, 276–277 (1975).

Para analizar una clasificación de carácter económico, como la que tenemos ante nos, se ha elaborado el aná-

---

([5]) Por legislación especial también se exige que todo reglamento sea presentado ante la Oficina del Secretario de Estado de Puerto Rico, y entrará en vigor 30 días después. 3 L.P.R.A. sec. 1046. Así se hizo en el caso ante nos.

lisis tradicional mediante el cual una clasificación no debe ser invalidada, a menos que sea claramente arbitraria y no pueda establecerse nexo racional alguno entre la misma y un interés legítimo del Estado. Bajo esta fórmula se ha interpretado que es constitucional una ley siempre que pueda concebirse razonablemente una situación de hechos que justifique la clasificación. *Vélez v. Srio. de Justicia*, 115 D.P.R. 533 (1984); *Marina Ind., Inc. v. Brown Boveri Corp.*, 114 D.P.R. 64, 77–86 (1983); *Coca-Cola Bottling Co. v. Srio. de Hacienda*, 112 D.P.R. 707 (1982); *U.S. Brewers Assoc. v. Srio. de Hacienda*, 109 D.P.R. 456, 461 (1980); *León Rosario v. Torres*, 109 D.P.R. 804, 813–815 (1980); *Wackenhut Corp. v. Rodríguez Aponte*, 100 D.P.R. 518, 531 (1972); *P.S.P., P.P.D., P.I.P. v. Romero Barceló*, 110 D.P.R. 248, 261 (1980); *Zachry International v. Tribunal Superior*, supra.

En *Wackenhut Corp. v. Rodríguez Aponte*, supra, pág. 531, este Tribunal resolvió que en materia de reglamentación socioeconómica no se viola la Cláusula de Igual Proteción de las Leyes meramente porque las clasificaciones estutarias sean imperfectas. Para resolver los profundos problemas que afectan el país es indispensable que el Gobierno tenga el poder de establecer clasificaciones socioeconómicas aunque las líneas de demarcación no sean claras. Esas determinaciones legislativas no se anularán si las situaciones fácticas lo justifican.

No podemos aceptar la contención de la Marketing and Brokerage Specialists, Inc., de que el único propósito de la reglamentación en controversia fue proteger a los productores de leche del país. Fundamenta su aseveración en que en las vistas públicas que realizó el Administrador antes de promulgar el reglamento, la mayoría de los deponentes fueron productores de leche que solicitaron la reglamentación de este producto. Aunque la recurrente acepta que en las vistas celebradas hubo amplia participación y que la mayoría favoreció la reglamen-

tación, nos pide que la anulemos tomando como fundamento el contenido de las deposiciones de los allí presentes. El ataque a una clasificación al amparo de la Cláusula de Igual Protección de las Leyes de nuestra Constitución, Art. II, Sec. 7, no puede prosperar basándose enteramente en que algunos sectores de la sociedad endosan la reglamentación impugnada. *Minnesota* v. *Clover Leaf Creamery Co.*, 449 U.S. 456 (1981); *Wackenhut Corp.* v. *Rodríguez Aponte*, supra. La validez del reglamento tampoco depende exclusivamente de las razones expuestas por sus defensores para sostener su posición.

El reglamento en controversia en el caso de autos es claramente válido bajo el escrutinio de nexo racional que rige en cuanto a reglamentación de tipo económico. La reglamentación protege al consumidor puertorriqueño al requerir que la leche UHT y esterilizada que se venda cumpla con unas normas mínimas de calidad y que se venda en empaques adecuadamente rotulados. De esta manera el Estado evita la posible confusión o engaño en cuanto a productos lácteos. Persigue también salvaguardar la salud del pueblo consumidor. Finalmente, al requerir licencia para la venta y distribución de este tipo de leche, coloca a sus distribuidores en iguales circunstancias y condiciones que a los demás. Así se fomenta una industria lechera sólida y estable sobre unas bases competitivas libres de prácticas monopolísticas perjudiciales a la economía del país. Ambos propósitos están acordes con el poder de razón del Estado (*police power*). Cf. *Nebbia* v. *New York*, 291 U.S. 502 (1934). Resolvemos, por lo tanto, que la reglamentación en cuanto a precio, envases y rotulación está racionalmente ligada a los propósitos e intereses que persigue la ORIL como agencia protectora de la salud y el bienestar del consumidor local. *E.L.A.* v. *Márquez*, 93 D.P.R. 393, 401–402 (1966); *Texaco Inc.* v. *Srio. de Obras Públicas*, 85 D.P.R. 712, 730 (1962); *Zachry International* v. *Tribunal Superior*, supra; *León Rosario* v. *Torres*, supra, págs. 813–815; *P.S.P., P.P.D., P.I.P.* v. *Romero Barceló*, supra, pág. 261.

Siendo válida de su faz la reglamentación, procede ahora examinar si su *aplicación* ha sido discriminatoria o ha violado el derecho a la igual protección de las leyes que ampara a la parte promovente. Nada aduce la peticionaria para ponernos en condiciones de pasar juicio sobre su escueta alegación de discrimen. No nos ha demostrado que mediante el reglamento su posición competitiva se haya afectado adversamente. Ni siquiera ha probado que ha sufrido mermas en la venta de sus productos ni que se le haya prohibido la importación de la leche UHT. Sencillamente nos alerta sobre el deseo de la competencia de sacarla del mercado puertorriqueño. Sin embargo, aun después de la promulgación del reglamento no probó que como resultado del mismo tuvo que retirarse. De hecho, podemos tomar conocimiento judicial de que su producto continuó vendiéndose en este mercado.

■ Por lo tanto, no podemos concluir que ha sido perjudicada en la aplicación del reglamento que ahora impugna. Al no poder hacerlo, no puede prosperar la mera alegación de discrimen económico al amparo de la Cláusula de Igual Protección de las Leyes. *Marina Ind., Inc.* v. *Brown Boveri Corp.*, supra; *U.S. Brewers Assoc.* v. *Srio. de Hacienda,* supra, pág. 461; *Wackenhut Corp.* v. *Rodríguez Aponte,* supra, pág. 531; *South P.R. Sugar Corp.* v. *Com. Servicio Pub.,* 93 D.P.R. 12, 16–17 (1966); *Bordas & Co.* v. *Srio. de Agricultura,* 87 D.P.R. 534, 548 (1963); *Philadelphia* v. *New Jersey,* 437 U.S. 617 (1978); *Hunt* v. *Washington Apple Advertising Comm'n,* 432 U.S. 333, 353 (1977); *Minnesota* v. *Clover Leaf Creamery Co.,* supra, pág. 463 n. 7.

## V

■ Es innecesario resolver en este caso si la Cláusula de Comercio Interestatal de la Constitución federal, Art. I, Sec. 8, en su estado durmiente aplica a Puerto Rico. *Cf. R.C.A.* v. *Gobierno de la Capital,* 91 D.P.R. 416 (1964); *South P.R.*

*Sugar Corp.* v. *Com. Servicio Pub.*, supra; *Int'l Harvester Co.* v. *Sria. de Hacienda,* 114 D.P.R. 281 (1983); *Gómez Hnos., Inc.* v. *Srio. de Hacienda,* 114 D.P.R. 367 (1983); *Columbia Pics. Inds.* v. *Sria. de Hacienda,* 114 D.P.R. 749 (1983).

Sin embargo, aun si aplicásemos la normativa federal sobre la Cláusula de Comercio, la reglamentación en controversia es válida.

◼ Para evitar que los empresarios locales, mediante presión política, ejerzan influencia indebida sobre la promulgación de legislación, el Tribunal Supremo federal escruta con suspicacia cualquier reglamentación que se dirija *exclusivamente* contra intereses foráneos al estado. *S.C. Hwy. Dept.* v. *Barnwell Bros.,* 303 U.S. 177, 184 n. 2 (1938); *McGoldrick* v. *Berwind-White Co.,* 309 U.S. 33, 45 n. 2 (1940).

◼ La Jurisprudencia federal ha mostrado deferencia hacia los estados cuando la reglamentación no es discriminatoria de su faz y su objetivo es proteger a la ciudadanía de posibles prácticas engañosas o perjudiciales por parte de intereses extraños a la localidad. *California* v. *Thompson,* 313 U.S. 109 (1941); *Breard* v. *Alexandria,* 341 U.S. 622 (1951). Porque la reglamentación afecte al comercio interestatal no debe ser invalidada necesariamente, particularmente si los beneficios de salud o bienestar público son determinantes al aprobarla, mientras que su impacto sobre el comercio interestatal es secundario o incidental. *Mintz* v. *Baldwin,* 289 U.S. 346 (1933). Como se expresara en *Head* v. *New Mexico Board,* 374 U.S. 424, 429 (1963), "[u]na ley estatal no debe ser dejada sin efecto con meramente demostrar que su administración afecta el comercio interestatal de alguna forma". (Traducción nuestra.)

◼ Es importante señalar que el Tribunal Supremo federal no ha abandonado tampoco la doctrina *Cooley* v. *Board of Wardens of Port of Philadelphia et al.,* 53 U.S. 298 (1851),

que estableció la dicotomía entre intereses *locales* y los de carácter *nacional*. Así, en *Cities Service Co.* v. *Peerless Co.*, 340 U.S. 179, 187 (1950), se convalidó una reglamentación estatal que perseguía proteger un recurso natural de la localidad contra su posible mal uso o despilfarro. Por lo tanto, aun si el impacto sobre los sectores foráneos al estado reglamentador es grande, la reglamentación se considerará válida si el fin perseguido dentro de la razón de estado (*police power*) claramente es preponderante, mucho más cuando no discrimina por razón de la localidad del negocio. *American Can Co.* v. *Oregon Liquor Control Com'n*, 517 P.2d 691, 697 (1973); *Firemen* v. *Chicago, R.I. & P.R. Co.*, 393 U.S. 129 (1968).

Si el propósito es legítimo, poco importa que algún sector de la sociedad o algún legislador pretenda utilizarla para proteger intereses puramente locales, con fines proteccionistas, y con la intención de ganar adeptos. *Minnesota* v. *Clover Leaf Creamery Co.*, supra, pág. 463 n. 7. En *Minnesota* v. *Clover Leaf Creamery Co.*, supra, se convalidó una legislación estatal que prohibía el uso de envases plásticos en la venta de leche e imponía el uso de envases de cartón, ya que el estado interesaba proteger el medio ambiente de los efectos nocivos de los recipientes desechables de plástico. Como de su faz el estatuto no discriminaba entre comercio interestatal e intraestatal, el tribunal entonces se aventuró a examinar si los beneficios a la ciudadanía eran mayores que los obstáculos o cargas que se imponían a los productores foráneos. Se determinó en *Minnesota* v. *Clover Leaf Creamery Co.*, supra, que los beneficios a la ciudadanía eran mayores y, por ende, era válida la reglamentación.

Por lo tanto, se sostendrá la reglamentación si persigue proteger un interés estatal legítimo, si existe un nexo racional entre los propósitos perseguidos por la misma y la clasificación que se emplea, y si el efecto que la actuación estatal tiene sobre el comercio interestatal es incidental.

338

*Southern Pacific Co.* v. *Arizona,* 325 U.S. 761, 767–768 (1945) ; *Cities Service Co.* v. *Peerless Co.,* supra.

■ En el presente caso los peticionarios son importadores de una leche producida en Canadá. Aunque ninguna de las partes ha planteado que existan diferencias en el análisis a realizar cuando una reglamentación se alega que afecta un producto extranjero bajo la Cláusula de Comercio y cuando se afecta el comercio interestatal, aun si aceptamos la teoría de los que postulan que los poderes de los estados están más limitados en el primer caso, *e.g.* L. H. Tribe, *American Constitutional Law,* Nueva York, Ed. Foundation Press, 1978, págs. 369–370, el reglamento aquí en disputa sobreviviría ese escrutinio estricto. Una reglamentación que afecte el comercio interestatal debe sobrevivir no sólo el análisis de la Cláusula de Comercio, sino que, además, debe demostrarse que la actuación estatal "no afecta intereses nacionales a ningún nivel significativo". Ibíd., pág. 370. Véanse: *Cooley* v. *Board of Wardens,* supra; *Bob-Lo Excursion Co.* v. *Michigan,* 333 U.S. 28 (1948). *Cf. Gómez Hnos., Inc.* v. *Srio. de Hacienda,* supra.

De los autos se desprende que el reglamento en disputa pretende proteger al consumidor. *Cf. Nebbia* v. *New York,* supra. Para lograr esto requiere que la leche UHT se empaque de determinada forma y se venda en determinada área de los comercios. Requiere, además, que los distribuidores de la leche obtengan una licencia de la ORIL. No hay dudas de que la reglamentación está racionalmente relacionada con un fin legítimo del Estado, *Cities Service Co.* v. *Peerless Co.,* supra; de proteger al consumidor, *California* v. *Thompson,* supra; *Breard* v. *Alexandria,* supra; *Milk Board* v. *Eisenberg Co.,* 306 U.S. 346 (1939). La reglamentación no discrimina entre productos elaborados en Puerto Rico y los importados. No le impide a nadie que venda su producto en la isla. No coloca a los distribuidores de la leche UHT en una posición de desventaja frente a los elaboradores de Puerto Rico. Más aún, la re-

glamentación aplica tanto a productores de leche UHT de Puerto Rico como del extranjero. (⁶) Su efecto sobre el Comercio Interestatal es incidental o secundario y está ampliamente superado por el legítimo interés estatal. *Cities Service Co.* v. *Peerless Co.*, supra; *Mintz* v. *Baldwin*, supra; *Head* v. *New Mexico Board*, supra. Por último, la reglamentación impugnada no afecta la política oficial del Gobierno de Estados Unidos en esta área. *Bob-Lo Excursion Co.* v. *Michigan*, supra. *Cf. Zschernig* v. *Miller*, 389 U.S. 429 (1968).

Resolvemos, por lo tanto, *que el Reglamento Núm. 2 de la Industria Lechera cumple las normas procesales y constitucionales necesarias para ser válido. Se confirmará la sentencia recurrida.*

El Juez Asociado Señor Rebollo López concurre en el resultado sin opinión escrita.

---

(⁶) Aunque al momento de aprobarse el reglamento no se producía leche UHT en Puerto Rico, la realidad es que al presente la Industria Lechera de Puerto Rico, Inc. está produciendo localmente la leche UHT marca Indulac. Para poder venderla en la isla tiene que cumplir con los mismos requisitos que el peticionario.