Rossy García, Juez Ponente
*914 TEXTO COMPLETO DE LA RESOLUCION
El recurso instado en el caso de epígrafe interesa la revisión y revocación de una resolución y orden dictada por la Comisión de Servicio Público de Puerto Rico (en adelante Comisión), el 26 de abril de 1996. Mediante ésta, se creó una nueva estructura tarifaria para las empresas dedicadas al acarreo de carga en furgones mediante paga.
Habiendo comparecido la agencia recurrida para oponerse a la expedición del auto solicitado y encontrándonos en condición de dictaminar luego de un cuidadoso análisis del recurso instado, a la luz de la totalidad de los documentos que obran en autos y derecho aplicable, resolvemos que resulta procedente denegar su expedición.
I
El 4 de septiembre de 1987, mediante resolución y orden emitida al efecto, la Comisión de Servicio Público aprobó un ajuste tarifario de un 8% para las empresas de transporte de carga. Vigentes las tarifas así ajustadas, el 5 de noviembre de 1993 Equipos Borínquen, Inc., compañía privada de acarreo de carga en furgones, solicitó una revisión del esquema tarifario, peticionando la concesión de un aumento en las tarifas no menor de veinticinco por ciento (25%). En apoyo a su solicitud alegó que el aumento solicitado era necesario "dado el incremento en costos de las operaciones [de la] peticionaria, así como de todos los concesionarios... que se dedican a mover furgones". En atención a dicha solicitud y como parte del tramite correspondiente, el 23 de agosto de 1994 la Comisión emitió una orden administrativa dirigida a nueve (9) concesionarios que fueron seleccionados a los fines de ser utilizados como muestra en un estudio y evaluación que habría de realizarse. En particular, les solicitó que suministraran una serie de documentos e información que les fue requerida. Según se indicó en la referida orden, las empresas seleccionadas fueron escogidas "por haber participado en el estudio que con este mismo fin se realizó en el 1990 y facilitaría comparar los costos en las partidas allí incluidas". 
Con estos antecedentes y luego de los estudios pertinentes, en particular, las recomendaciones contenidas en el informe preparado por Applied Research Inc., firma consultora contratada por la Comisión a tales efectos, en el que se consideraron, entre otros factores relativos al movimiento de *915 furgones, los costos fijos, los costos operacionales, la distancia de viajes y la dificultad de acceso, el 13 de septiembre de 1995 ésta emitió Acuerdo y Orden estableciendo unas tarifas provisionales actualizadas para el tráfico de carga en furgones desde el puerto marítimo de San Juan a los pueblos y municipios no cubiertos por las tarifas entonces vigentes. Además, estableció nuevas categorías tarifarias "tomando como base la distancia en millas desde San Juan, autorizando un incremento del 7.4% en las tarifas vigentes". A su vez y a los fines de brindar a toda parte interesada la oportunidad de ser oída o presentar por escrito sus comentarios o recomendaciones sobre las tarifas propuestas y las zonas establecidas para propósitos tarifarios, la Comisión ordenó la celebración de una vista pública. A tenor dispuso, además, la publicación de dos avisos en periódicos de circulación general, los que fueron difundidos en el Vocero y en El Nuevo Día el lunes 2 de octubre de 1995. Quedó así convocada la vista pública para el 3 de noviembre de 1996 y se puso a disposición de los interesados, para ser examinado, el Estudio sobre la Revisión de las Tarifas Vigentes para la Transportación de Carga en Furgones, fechado 5 de junio de 1995, base sobre la cual descansaban las modificaciones tarifarias establecidas por la Comisión.
El día asignado para la vista, a la que no compareció la parte aquí peticionaria, asistieron y testificaron el Sr. Rivera Ayala, Ayudante Ejecutivo del Presidente de la Cámara de Comercio; el Sr. Esquilín Benitez, Presidente del Sindicato de Dueños de Remolques; y varios concesionarios. Concluida la vista y luego de evaluar y considerar las recomendaciones, comentarios y objeciones de las partes con interés en torno al aumento tarifario y la nueva estructura tarifaria propuesta, la Comisión emitió la resolución ahora recurrida, la que fue debidamente notificada el 29 de abril de 1996. Mediante ésta, y descansando en el estudio económico preparado por Applied Research Inc., el que, según por ella determinado, no fue controvertido, la Comisión ratificó el aumento de 7.4% previamente establecido y modificó el antiguo esquema tarifario. En el proceso tomó en consideración, entre otros factores, la distancia en millas entre el puerto de San Juan y los puertos de destino, el tipo de carretera, así como la dificultad de carga a zonas montañosas y de acceso difícil.
Con este trasfondo, e inconforme con la nueva estructura y ajuste tarifario aprobado por la Comisión, interpuso el recurso que nos ocupa. En el mismo imputa la comisión de los siguientes tres errores:

"1. Erró la Comisión de Servicio Público al establecer la tarifa para el pueblo de Cayey, porque de la propia faz de la resolución y orden, incumple las disposiciones y/o fundamentos que dan génesis a la misma.

2. Erró la Comisión de Servicio Público al establecer la tarifa para el pueblo de Cayey, porque el monto establecido para la misma es producto de una actuación arbitraria, ilegal o irrazonable.

3. Erró la Comisión de Servicio Público al establecer la tarifa para el pueblo de Cayey, dado que la misma no está apoyada por evidencia sustancial."

Por los fundamentos que pasamos a exponer resolvemos que no se cometieron los errores imputados y que resulta procedente denegar la expedición del auto solicitado.
II
Por la naturaleza de los fundamentos de impugnación esgrimidos, debemos iniciar por reconocer la autoridad de la Asamblea Legislativa para delegar poderes cuasi legislativos así como cuasi judiciales a las agencias administrativas. Kenneth C. Davis, Administrative Law Treatise, 2daEd., sec. 6.1, pág. 448. En el proceso, y por la complejidad del mandato otorgado a estas agencias administrativas, ha sido necesario que la Rama Legislativa les delegue poderes con normas amplias y generales, permitiéndoles una gran discreción en el desarrollo y ejecución de la política pública. M. & B.S. Inc. v. Depto. de Agricultura, 118 D.P.R. 319, 326 (1987); López v. Junta de Planificación, 80 D.P.R. 646, 661 (1958). Así, la función de los tribunales generalmente ha de ir dirigida a evaluar: (1) si la actuación administrativa está autorizada por la ley; (2) si se delegó poder de reglamentación; (3) si la reglamentación promulgada está dentro de los amplios poderes delegados; (4) si al aprobarse el reglamento se cumplió con las normas procesales de la ley orgánica y las leyes especiales; y (5) si la reglamentación es arbitraria o caprichosa. M. & B.S. Inc. v. Depto. Agricultura, supra, a la pág. 326.
*916 Dirigiendo nuestra atención a la situación particular del caso que nos ocupa, observamos que mediante la Ley Núm. 109 de 28 de junio de 1962, según enmendada, 27 L.P.R.A. sec. 1001 et seq., conocida como Ley de Servicio Público de Puerto Rico, se creó la Comisión de Servicio Público. En particular, y por virtud del artículo 14 de la ley, 27 L.P.R.A. sec. 1101, se le otorgó a dicha agencia autoridad para reglamentar y fiscalizar a las empresas dedicadas al acarreo de carga mediante paga y, en particular, mediante disposición expresa del artículo 17, 27 L.P.R.A. see. 1104, se le facultó para prescribir tarifas justas y razonables. En cuanto a este último extremo, expresamente dispone el inciso (a)del referido Art. 17 que ”[e]n la fijación de las tarifas para porteadores públicos la Comisión no tiene que considerar a éstos individualmente pudiendo basar sus determinaciones en la situación general de la actividad reglamentada". Por su parte, el Art. 2(d), 27 L.P.R.A. sec. 1002(d), al definir "porteador público" incluye, entre otros, a toda "empresa de acarreo de carga en vehículos de motor".
De otra parte, en lo que respecta a la modificación de tarifas, el Art. 16, 27 L.P.R.A. see. 1103, provee como sigue:

"(a) Debe solicitarse de la Comisión que se apruebe por ésta toda tarifa nueva o modificación de tarifa. La Comisión deberá notificar la solicitud en la prensa del país y ofrecer a todas las partes afectadas una oportunidad adecuada de ser oídas en los procedimientos que llevase a cabo para determinar si procede o no la solicitud. La tarifa solicitada no regirá durante el transcurso de dichos procedimientos. La Comisión podrá dictar la orden que fuere adecuada como si se tratara de un procedimiento originado de acuerdo con la see. 1104 de este título.

(b)La Comisión, al determinar o prescribir tarifas justas y razonables, estará facultada para considerar entre otras cosas, el grado de eficiencia, suficiencia y adecuacidad [sic] de las facilidades disponibles y de los servicios prestados. Podrá considerar, además, el valor de tales servicios para el público y el potencial de una compañía de servicio público para mejorar dichas facilidades y servicios. Sujeto a lo estipulado en el inciso (a) de esta sección, la Comisión concederá un rédito justo y razonable sobre la base tarifaria justa y razonable que se determine y prescriba para una compañía de servicio público.

(c)En cualquier procedimiento tarifario, la compañía de servicio público o porteador por contrato concernido, tendrá el peso de la prueba."

En cuanto a las tarifas temporáneas, el Art. 19, 27 L.P.R.A. see. 1106, dispone:

"(a) En cualquier procedimiento que envuelva la razonabilidad de las tarifas de cualquier compañía de servicio público, la Comisión podrá, luego de dar a las partes una oportunidad adecuada de ser oídas, en aquellos casos en que a su juicio fuere en provecho público, fijar tarifas temporáneas que serán puestas en vigor por la compañía de servicio público concernida durante el tiempo que se requiriese para la determinación de las tarifas que deben en definitiva autorizarse o prescribirse. Cuando a su juicio, las condiciones prevalecientes en una empresa sean tales que requieran acción inmediata, la Comisión podrá obviar el requisito de dar a las partes una oportunidad adecuada de ser oídas y hacer sus determinaciones de acuerdo a la información en su poder.

(b) Las tarifas temporáneas así prescritas estarán en vigor hasta la resolución difinitiva del procedimiento tarifario. Si posterior a su fijación, la Comisión o el tribunal revisador determinase que las tarifas temporeras fijadas por la Comisión no fueron justas y razonables, permitirá a la compañía de servicio público concernida recuperar por medio de un aumento temporero sobre las tarifas definitivas, la cantidad que representa la diferencia entre el ingreso bruto obtenido por razón de las tarifas temporeras y el ingreso bruto que hubiera obtenido de haberse fijado unas tarifas temporeras justas y razonables."

Finalmente, y en lo que respecta a los procedimientos para la reglamentación, las secs. 2.1 y 2.2 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sees. 2121 y 2122, disponen como sigue:

*917
"Sec. 2121. Notificación de Propuesta de Adopción de Reglamentación

Siempre que la agencia pretenda adoptar, enmendar o derogar una regla o reglamento, publicará una aviso en un periódico de circulación general en Puerto Rico. El aviso contendrá un resumen o explicación breve de los propósitos de la propuesta acción, una cita de la disposición legal que autoriza dicha acción y la forma, el sitio, los días y las horas en que se podrán someter comentarios por escrito o solicitar por escrito una vista oral sobre la propuesta acción con los fundamentos que a juicio del solicitante hagan necesaria la concesión de dicha vista oral e indicará el lugar y dónde estará disponible al público el texto completo de la reglamentación a adoptarse.

"See. 2122. Participación Ciudadana

La agencia proveerá oportunidad para someter comentarios durante un término no menor de treinta (30) días, contados a partir de la fecha de la publicación del aviso."

Al examinar ahora el ajuste tarifario que es objeto de impugnación evidente resulta, primero, que la Comisión tenía autoridad en ley. para reglamentar .y fiscalizar Jas. empresas dedicadas al acarreo de carga mediante paga, así como para revisar y aprobar las tarifas por tales servicios. De otra parte, la Comisión cumplió con el trámite correspondiente, brindando oportunidad a las partes afectadas para presentar sus recomendaciones, comentarios u objeciones en relación con el aumento tarifario y la nueva estructura tarifaria objeto de evaluación y examen, ello a los fines de establecer "tarifas justas y razonables" como es el mandato de ley.
Es ante la realidad antes expuesta que la peticionaria argumenta, discutiendo conjuntamente los tres errores señalados sin base o fundamento meritorio alguno, que la acción que es objeto de impugnación no está apoyada por evidencia sustancial; ello por razón de que en su caso particular, la tarifa establecida por el pueblo de Cayey sufrió una disminución en lugar de un aumento. En el proceso, pierde de perspectiva los criterios y factores utilizados por la Comisión al modificar las tarifas, entre otros, la distancia en millas, el tipo de carretera y dificultad de los accesos, así como que en la fijación de tarifas para porteadores públicos, "la Comisión no tiene que considerar a éstos individualmente, pudiendo basar sus determinaciones en la situación general de la actividad reglamentada".
Apropiado resulta aquí señalar que el criterio rector de revisión judicial en materia de decisiones administrativas consiste en resolver si existe una base racional respaldada por evidencia sustancial que sostenga la decisión impugnada. Si la totalidad del expediente administrativo sostiene las determinaciones adoptadas por la agencia, los tribunales no deben sustituirlas por su propio criterio. La Facultad de las Ciencias Sociales Aplicadas, Inc. v. Consejo de Educación Superior, 134 D.P.R. _ (1993), 93 J.T.S. 88, a la pág. 10783; M. & V. Orthodontics v. Negociado de Seguridad de Empleo, 115 D.P.R. 183, 188-189 (1984). Ello es cónsono con la norma clara de autorrestricción, predicada en que los procedimientos y las decisiones de los organismos administrativos especializados tienen una presunción de regularidad y corrección, por lo que deben ser respetadas mientras la parte que la impugne no produzca suficiente evidencia para impugnarla. Fuertes v. ARPE, 131 D.P.R. _ (1992), 92 J.T.S. 105, a la pág. 9808; Murphy Bernabe v. Trib. Superior, 103 D.P.R. 692, 699-700 (1975). Por ello, la revisión judicial de decisiones administrativas debe limitarse a determinar si la agencia actuó arbitraria o ilegalmente, o en forma tan irrazonable que su actuación constituyó un abuso de discreción Murphy Bernabé v. Trib. Superior, supra, a la pág. 699. Por ello es norma clara que para que un tribunal pueda decidir que la evidencia en el expediente administrativo no es sustancial para sostener una determinación administrativa, es necesario que la parte afectada le señale que existe otra prueba en el récord que razonablemente reduzca o menoscabe el peso de tal evidencia hasta el punto de que se le demuestre claramente que la decisión del organismo administrativo fue arbitraria y no está justificada por evaluación justa del peso de la pmeba que tuvo ante sí. P.R.T.C. v. Unión Independiente de Empleados, 131 D.P.R. _ (1992), 92 J.T.S. 93, a la pág. 9710. Tal obligación no ha sido descargada en el caso que nos ocupa por la peticionaria. Tampoco surge del expediente que la resolución de la Comisión fuese ilegal, arbitraria o irrazonable. Por el contrario, de los documentos que obran en autos se hace evidente que la Comisión evaluó el sistema tarifario completo, ello conforme a lo dispuesto en su ley orgánica. Fue así como, tomando en consideración la situación general de las tarifas permanentes que no se habían revisado desde el año 1987, estableció *918 un nuevo esquema tarifario a base de las millas recorridas, el tipo de carretera, las zonas montañosas, la dificultad de los accesos y los costos de transportación. Con tal ejercicio legítimo de discreción, en circunstancias donde las determinaciones de la Comisión están avaladas por evidencia sustancial obrante en el expediente administrativo, determinaciones que a su vez son razonables y compatibles con los propósitos de la ley, no habremos de intervenir. Resolvemos, en consecuencia, que resulta procedente denegar la expedición del auto solicitado.
m
Por los fundamentos anteriormente expuestos, se deniega la expedición del auto solicitado.
Lo acuerda y manda el tribunal y lo certifica la señora Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 97DTA30
1. Véase Resolución y Orden de la Comisión de Servicio.Público de 4 de septiembre de 1987, Apéndice del Escrito en Oposición, págs. 1-5.
2. Véase Petición, Apéndice del Escrito en Oposición, págs. 6-7.
3. Véase Orden Administrativa, Apéndice del Escrito en Oposición, págs. 9-12.
4.Id., alapág. 11.
5. Véase Acuerdo y Orden, Apéndice del Escrito en Oposición, págs. 13-16.
6. Id., alapág. 15.
7. Véase Avisos, Apéndice del Escrito en Oposición, págs. 17-18.
8. Véase Estudio, Apéndice del Escrito en Oposición, págs, 19-164.
9. Conforme al análisis realizado entre la tarifa provisional y la permanente, en 38 casos la tarifa permaneció sin variación; en 41 casos medió un aumento de tarifa; y en 37 casos la tarifa disminuyó. Véase comunicación de Applied Research Inc., Apéndice del Escrito en Oposición, págs. 177-187.