Soler Aquino, Juez Ponente
*946 TEXTO COMPLETO DE LA SENTENCIA
Se solicita revisión de una resolución del Departamento de la Familia, mediante la que se redujo las horas de servicio del Programa de Ama de Llaves. Dicha resolución fue dictada el 6 de junio de 1997, de la cual se solicitó reconsideración que fue declarada NO HA LUGAR el 3 de julio de 1997. De esta determinación final de la agencia, se ha acudido oportunamente ante nos mediante el presente recurso radicado el 22 de julio de 1997.
Los peticionarios han recibido los beneficios del Programa de Ama de Llaves del Departamento de Servicios Sociales, ahora Departamento de la Familia, desde el año 1989. Se trata de dos hermanos de 47 y 38 años de edad con problemas de retardación severa grave, que viven solos y únicamente cuentan con una hermana enferma que vive en un apartamento en los altos de su residencia.
Originalmente el Departamento les otorgó el servicio de una ama de llaves durante seis horas diarias cinco días a la semana. No obstante, el 10 de abril de 1997 fueron notificados de que se les recortaría el servicio de ama de llaves de seis a tres horas diarias. Esta determinación de la agencia obedeció a unas directrices de la Administradora de la Administración de Familias y Niños, con el fin de poder lidiar con un problema de reducción de fondos. Estas directrices fueron informadas a los Directores Regionales de la agencia mediante una circular del 1 de abril de 1997. En la misma se dispuso que:
"7. Debido a que en estos momentos las Regiones ño tienen fondos disponibles no se autorizará ningún servicio que implique erogación de fondos.

2. Los fondos de los casos que se diecontinuan no se utilizarán para autorizaciones nuevas.

3..No se autorizarán horas adicionales a casos activos de ama de llaves, ni se utilizarán las horas que se descontinúen.

4. En las situaciones que reciban el Servicio de Ama de Llaves por cuatro horas diarias o más, la oficina local o centro de servicios integrales las reducirá a tres horas diarias.

5. No se autorizarán aumentos en la subvención en las situaciones que reciben el servicio de hogar sustituto.

6.Cada oficina regional será responsable de efectuar una lectura y revisión de todos los casos activos que reciben los servicios de ama de llaves y Hogar Sustituto para adultos, afín de asegurarse que continúan cumpliendo con los requisitos de elegibilidad establecidos. El informe de esta lectura será sometido a nuestra Oficina no más tarde del 30 de abril de 1997, utilizando las planillas que se adjuntan.

7.Las oficinas Regionales descontinuarán la práctica de enviar a nivel central de la Administración de Familia y Niños, todas las situaciones para el Servicio de Am.a de Llaves y de Hogar Sustituto que tienen pendiente para autorización fiscal."

Estas normas de austeridad se pondrán en práctica de inmediato y continuarán en efecto indefinidamente hasta que se reciban otras instrucciones.
Inconformes con la determinación de la agencia peticionaria solicitó al Departamento la celebración de una vista. Analizada la evidencia presentada, el foro1 administrativo emitió la resolución recurrida, mediante la que reconoció que los hermanos Norma y Dennis Jiménez Butter *947 sufren de una condición de retardo mental que les imposibilita valerse por sí mismos y que sólo tienen una hermana quien alega que no puede cuidarlos por problemas de salud. No obstante concluyó que la oficina local actuó correctamente al reducir las horas de servicio por falta de fondos. Es de esta determinación que se acude ante nos.
La peticionaria alega que la agencia recurrida erró al no tomar en consideración el Informe y testimonio de la trabajadora social de la agencia, así como el testimonio de la hermana de los peticionarios. De igual modo sostiene, que dicho foro erró al no considerar las disposiciones del reglamento que los rige y al reducir el servicio sin previa vista.
Nuestra determinación es cónsona con la del organismo administrativo. La demanda por los servicios de amas de llaves ha registrado un aumento dramático en los últimos años. Según los datos estadísticos de la agencia, al 30 de junio de 1996 existían 9,486 solicitudes pendientes de autorización del servicio de ama de llaves. Para sufragar el costo de esa demanda, el programa necesitaría contar con una asignación sustancial de fondos adicionales. El costo promedio anual por cuatro horas de servicio es de $5,124.00. Para prevenir el déficit proyectado, la agencia emitió una serie de directrices entre las que se encuentra la reducción de horas de servicio a un máximo de tres horas diarias. La agencia recurrida actuó dentro de la facultad conferida en el Reglamento Número 4472 del 21 de junio de 1991, que regula la prestación de Servicios de Ama de Llaves. A estos efectos el Artículo VÍII de dicho reglamento establece que:

"8.1 La duración del servicio estará condicionada a la determinación del Departamento fundamentada en su juicio profesional a tono con las necesidades del beneficiario y los criterios de elegibilidad y condiciones dispuestas en los Artículos III, IV y V de este reglamento.

Sección 8.2 Razones para la terminación del servicio. El servicio terminará cuando:

a. el plan de servicios se ha logrado

b. se ha vencido el término por el cual se autorizó el servicio

c. la familia cuenta con los arreglos satisfactorios para la atención de los beneficiarios

d. las razones que justifican la prestación del servicio ya no existen

e. el beneficiario declina continuar recibiendo el servicio excepto en los casos en que medie una orden expedida por un tribunal competente

f. cuando la agencia determine que otros servicios existentes en la comunidad serían más efectivos que el de ama de llaves

g. cuando el o los beneficiarios directos del servicio establecen su residencia fuera de Puerto Rico

h. cuando fallecen los beneficiarios directos del servicio

i. la partida en el presupuesto asignado para este servicio así lo requiera."

En el caso de autos la agencia ha decidido, entre otras medidas, optar por la reducción en el número de horas de servicios, para evitar que la excesiva demanda de éstos, ocasione una crisis presupuestaria. De este modo la agencia persigue garantizar que el servicio sea recibido por una mayor cantidad de personas, pero sin que esto pueda ocasionar una crisis presupuestaria a la agencia. La determinación recurrida guarda perfecta armonía con la facultad conferida en la citada reglamentación. Es norma reiterada que las conclusiones e interpretaciones de los organismos administrativos merecen una gran consideración y respeto por parte de los tribunales. La parte recurrente no pudo derrotar la presunción de corrección y validez de la que goza la resolución recurrida. 
No obstante lo antes expuesto, reconocemos la precariedad en que se encuentran estos dos seres *948 humanos, con un problema de retardación mental severo, que viven solos y que no cuentan con familiares que puedan cuidarles. Por tal razón nuestra determinación de ningún modo menoscaba o limita el derecho de los recurrentes a recibir cualquier otra ayuda o beneficios que el Departamento de la Familia pudiera proveerle, así como cualquier otra agencia del gobierno.
Por todas las razones antes expuestas y de conformidad al derecho citado se confirma la resolución recurrida.
Así lo acordó y mandó el Tribunal y lo certifica la Secretaria General.
Aida I. Oquendo Graulau
Secretaria General
ESCOLIO 98 DTA 59
1. Negrón v. Junta de Planificación, 95 J.T.S. 134; Hernández v. Consejo de Educación Superior, 120 D.P.R. 194 (1987); M.B.S. Inc. v. Departamento de Agricultura, 118 D.P.R. 319 (1987).