CATALYTIC INDUSTRIAL MAINTENANCE CO., ETC., patrono y recurrente, *v.* FONDO DEL SEGURO DEL ESTADO, asegurador y recurrido.

*Número:* CE-86-649 　　　*Resuelto:* 21 de abril de 1988

*Waldemar Del Valle Armstrong* y *Miguel Limeres Grau*, de *Parra, Del Valle, Grau & Limeres*, abogados del recurrente; *José M. Fernández,* del Fondo del Seguro del Estado, abogado del recurrido.

LA JUEZ ASOCIADA SEÑORA NAVEIRA DE RODÓN emitió la opinión del Tribunal.

El caso de autos tiene su génesis en un accidente laboral ocurrido el 16 de diciembre de 1975 en los predios de la Puerto Rico Olefins, en el complejo petroquímico de Peñuelas. Como resultado de una desastrosa explosión, los obreros Vicente Almodóvar Vargas, Justo R. Texeira Marrero, Ismael Texeira Marrero, Carlos J. Borrero y Raúl Costas, que se encontraban realizando labores de mantenimiento para su patrono, Catalityc Industrial Maintenance Company, Inc. (en adelante C.I.M.Co.), sufrieron graves y serias quemaduras. "Debido a la referida situación de emergencia y por prescripción médica, y previa consulta, notificación y autorización del Dr. Miguel. A. Tulla, Director Médico de la Oficina Regional de Ponce del Fondo del Seguro del Estado (Asegurador), el patrono procedió de inmediato a contratar y realizar las gestiones necesarias para trasladar urgentemente a los obreros lesionados al Centro de Quemaduras del Hospital John Sealy, en Galv[es]ton, Texas."[1] *Exhibit* A, pág. 5. A pesar de todas las diligencias realizadas, los obreros Costas y Borrero murieron antes de que pudieran ser trasladados a Tejas, y los obreros Almodóvar Vargas e Ismael Texeira Marrero fallecieron en el Hospital John Sealy mientras recibían tratamiento. El único sobreviviente

---

[1] Decisión y orden de la Comisión Industrial de 15 de marzo de 1985, notificada el 8 de mayo de 1985.

de la tragedia fue el obrero Justo Texeira Marrero. Éste quedó total y permanentemente incapacitado. C.I.M.Co. reclamó ante el Fondo del Seguro del Estado (en adelante F.S.E.) los gastos incurridos en relación con este accidente.

Luego de aproximadamente once (11) años, y tras una azarosa trayectoria en al ámbito administrativo, el 11 de septiembre de 1986 la Comisión Industrial (en adelante C.I.), en reconsideración, emitió la resolución que es objeto de este recurso. Denegó la solicitud de C.I.M.Co. por no constar en los expedientes del F.S.E. prueba del pago de los gastos incurridos. La controversia gira alrededor de si bajo las circunstancias específicas de este caso la C.I. actuó correctamente al denegar el reembolso de los gastos reclamados por C.I.M.Co. y requerir, once (11) años después de la reclamación original, prueba de dichos gastos. Veamos.

## I

En su alegato el F.S.E. plantea que la solicitud hecha por C.I.M.Co. el 5 de mayo de 1976 fue informal; que el requerimiento formal fue hecho por el presidente de la compañía el 15 de mayo de 1978; que no obstante, el F.S.E., el 30 de enero de 1978, emitió una decisión en el caso del obrero Almodóvar Vargas que autorizaba los gastos iniciales reclamados, pero que, sin embargo, los gastos autorizados no se pagaron porque la recurrente no presentó comprobantes de pago ni evidencia alguna de haberlos hecho.

Resulta inaceptable la posición del F.S.E. Ahora pretende alegar que, a pesar de que el administrador celebró vista y autorizó el reembolso de unos gastos, esta determinación la hizo sin contar con la evidencia necesaria para avalar que la reclamante realmente incurrió en ellos. No es en la etapa de ejecución donde se exige la prueba. "Después de todo, los procedimientos y las decisiones ante un organismo administrativo tienen a su favor una presunción de regulari-

dad y corrección que debe ser respetada mientras la parte que la impugne no produzca suficiente evidencia para derrotarla." *Henríquez v. Consejo Educación Superior,* 120 D.P.R. 194 (1987); *M.& B.S., Inc. v. Depto. de Agricultura,* 118 D.P.R. 319 (1987); *Murphy Bernabe v. Tribunal Superior,* 103 D.P.R. 692, 699 (1975). Ni de los expedientes a nivel administrativo ni de los documentos sometidos con este recurso surge evidencia para derrotar esta presunción.

En cuanto a los casos de los obreros Ismael Texeira Marrero, Justo R. Texeira Marrero y Carlos J. Borrero, arguye el F.S.E. que "todo aparenta que antes de [notificar a estos obreros], el Director Regional se percató de que quien reclamaba el reembolso no era el obrero o una persona en su nombre sino el patrono y también de que no existía una política administrativa o norma [del Tribunal Supremo] otorgando el derecho al patrono".(2) Alegato del F.S.E., pág. 3. Por estas razones, alega ahora el F.S.E. que se paralizaron las gestiones en estos casos por prácticamente ocho (8) años. Un análisis y estudio detallado de los voluminosos expedientes administrativos, los alegatos de las partes y la documentación que se acompañó, nos lleva a concluir que la C.I. erró al

---

(2) En el expediente del obrero Justo R. Texeira Marrero aparece una decisión fechada 13 de febrero de 1978 y firmada por el Sr. Octavio García Alvarado, Director Regional de Ponce, en representación de la Administradora del Fondo del Seguro del Estado (en adelante F.S.E.). Aparentemente esta decisión no fue notificada. En la misma se indica lo siguiente:

"Vistos los hechos que anteceden, *la prueba obrante en autos* y el criterio de emergencia que consigna la Ley y la jurisprudencia para que proceda el reembolso de los gastos médicos, *SE RESUELVE que los gastos médicos incurridos en el Hospital de Damas en Ponce ($1,214.96) y en Médico Privado, Dr. Sala, ($50.00), caen dentro* del criterio de emergencia que consigna la Ley y la jurisprudencia, y deben ser reembolsados a la Catalytic Ind. Maintenance Co., patrono del lesionado. *El remanente solicitado ascendente a la cantidad de $29,221.60, equivalentes a gastos de viajes y tratamiento médico en John Sealy Hospital NO son reembolsables, ya que el Fondo del Seguro no autorizó dichos gastos y NO caen dentro del criterio de emergencia que consigna nuestra Ley y la jurisprudencia.*" (Énfasis suplido.) *Exhibit* C, pág. 107.

dejar sin efecto en su totalidad la resolución y orden de 15 de marzo de 1985.(3) Veamos.

En los expedientes administrativos consta una carta de 23 de septiembre de 1976 del Director de Servicios Legales del F.S.E. al abogado de C.I.M.Co. en la cual, refiriéndose a la reclamación, indica:

> *Examinando los documentos que sometiste con posteriori-dad, noto que nos hacen* [sic] *falta r[é]cords clínicos de todos* y cada uno de los obreros por los cuales reclaman reembolso de gastos. Te agradeceré que nos suministres dichos r[é]cords tanto de los hospitales de Puerto Rico como el de Texas. (Énfasis suplido.) *Exhibit* A, pág. 73.

Como podrá observarse, en septiembre de 1976 los únicos documentos que aparentemente le hacían falta al F.S.E. eran los récord médicos. No hay en los expedientes otra solicitud por documentos contemporánea con la antes mencionada.

En relación con el obrero Almodóvar Vargas, el 30 de enero de 1978 el Administrador del F.S.E. emitió una decisión(4) en la cual resolvió que:

> . . . La [C.I.M.Co.], no obtuvo permiso ni autorización del [F.S.E.] para trasladar al lesionado al Hospital en Galvestone, Texas; ni para incurrir en gast[o] algun[o] en este caso.
>
> Vistos los hechos que anteceden, *la prueba obrante en autos* y el criterio de emergencia que consigna la Ley y la jurisprudencia para que proceda el reembolso de los gastos médicos, SE RESUELVE que los *gastos médicos incurridos* en el Hospital de Damas de Ponce ($1,278.86) y en Médico Privado, Dr. Sala, ($50.00), caen dentro del criterio de emergencia que consigna la Ley y la jurisprudencia, y deben ser reembolsados a la [C.I.M.Co.], patrono del lesionado occiso. *El remanente solicitado ascendente a $45,551.49, equiva-*

---

(3) Nos circunscribiremos a discutir sólo aquellos hechos que están avalados por las constancias en autos y las inferencias que razonablemente se deriven de ellos.

(4) Esta decisión se notificó el 1 de mayo de 1978.

*lentes a gastos de viaje y tratamiento médico en el John Sealy Hospital NO son reembolsables, ya que el [F.S.E.] NO autorizó dichos gastos y NO caen dentro del criterio de emergencia que consigna nuestra Ley y la jurisprudencia.*(5) (Énfasis suplido.) *Exhibit* A, pág. 79.

La decisión también señaló que C.I.M.Co. reclamaba *"el reembolso de los gastos incurridos en este caso,* en medicinas y tratamiento en facilidades médicas privadas". (Énfasis suplido.) *Exhibit* A, pág. 79. Desglosó los gastos así:

| | |
|---|---:|
| Hospital de Damas | $ 1,267.86 |
| John Sealy Hospital | 30,606.74 |
| Cuidado de Enfermeras | 8,600.81 |
| Patología | 1,010.50 |
| Patología | 924.50 |
| Departamento de Medicinas | 79.00 |
| Departamento de Medicinas | 65.00 |
| Departamento de Cirugía | 75.00 |
| Radiología | 178.50 |
| Otorrinolaringólogo | 25.00 |
| Dr. Sala | 50.00 |
| Pasaje Avión Ponce-San Juan | 110.00 |
| Pasaje Avión San Juan-Houston | 2,000.00 |
| Otros Gastos | 1,873.44 |
| TOTAL | $46,873.44 |

*Exhibit* A, pág. 79.

De esta decisión se desprende que el Administrador del F.S.E. fundó sus determinaciones de hecho y de derecho en la prueba presentada. Concedió, como gastos incurridos y razonables, por estar sostenidos por la prueba, el reembolso de los reclamados en relación con el Hospital de Damas ($1,267.86) y el doctor Sala ($50). Denegó el resto por entender que no eran reembolsables por no haber sido autorizados

(5) En el expediente del F.S.E. del obrero Almodóvar Vargas (78-06-09060) el primer documento que aparece es esta decisión del administrador.

y no estar cubiertos por el concepto de emergencia. La decisión no hace mención de que estos gastos no se hubiesen incurrido, no hubiese prueba para sostenerlos o fuesen irrazonables. Tampoco indica que sólo se está resolviendo una cuestión de derecho. En la actualidad la prueba sometida en la vista no consta en los expedientes administrativos de estos casos.

C.I.M.Co. apeló la decisión a la C.I. Tomando en consideración los fundamentos de la misma, la apelación giró alrededor de si los hechos apoyaban o no una determinación de que había existido una situación de emergencia extrema que justificaba los gastos reclamados incurridos fuera de. Puerto Rico.(6) Luego de celebrar una vista la C.I., el 26 de junio de 1980, emitió una resolución que determinaba que hubo una situación de extrema emergencia que justificaba los gastos incurridos fuera de Puerto Rico. Observó expresamente "que en este caso *el Asegurador aceptó reembolsar parte de los gastos —aquellos incurridos en Puerto Rico— lo cual es una admisión tácita del derecho del patrono al reembolso.* Lo que el [F.S.E.] cuestionó fue la naturaleza de la emergencia del caso, la cual ya hemos determinado como claramente presente". (Énfasis suplido.) *Exhibit* B, pág. 11. En ese momento, la C.I. entendió que el F.S.E. había pasado juicio sobre si los gastos se habían incurrido o no y que sólo restaba determinar si de acuerdo con la ley y jurisprudencia procedía el reembolso. Ordenó a la Administradora del F.S.E. "pagar al patrono la totalidad de los gastos reclamados en este caso, descontando lo pagado anteriormente y luego de determinar si los mismos son o no razonables". *Exhibit* B, pág. 12.

_____

(6) Cabe señalar que del expediente del obrero Almodóvar Vargas surge que, aunque a tenor con esta decisión el F.S.E. acordó pagar los gastos incurridos en el Hospital de Damas y por el doctor Sala, éstos no se pagaron alegadamente por haberse apelado de la decisión. Sin embargo, en su alegato el F.S.E. ahora alega que no se pagaron porque la recurrente C.I.M.Co. no aportó la prueba necesaria para determinar que realmente había incurrido en estos gastos.

De esta decisión el F.S.E. no solicitó reconsideración ni apeló ante este Tribunal.

## II

Aquí comienza la odisea de C.I.M.Co.: Se desarrolló por parte del F.S.E. un patrón de conducta inexplicable de negligencia, falta de diligencia y temeridad. El 11 y 15 de septiembre de 1980 se cursaron varios memorandos internos, en los cuales el Director de la Oficina de Asuntos Legales recomendó que se pagase la reclamación, pero que antes de hacerlo se constatase que el patrono no adeudaba primas y que ningún plan privado las hubiese pagado, y que se reembolsasen sólo las partidas de gastos médicos a base de tarifas pagadas por la agencia. En estos momentos la agencia no tenía dudas de que se contaba con evidencia de que los gastos reclamados se habían incurrido. El mandato de la C.I. para que se comprobara la razonabilidad de los gastos obviamente se refería a que éstos estuvieran de acuerdo con las tarifas mencionadas en los memorandos.[7]

El 7 de abril de 1981 C.I.M.Co. solicitó de la C.I. que ordenase al F.S.E. cumplir con la resolución. En su moción hizo mención también de los casos de los obreros Ismael Texeira Marrero, Justo R. Texeira Marrero y Carlos Borrero que aún se encontraban ante el F.S.E. sin decidir. El 24 de abril de 1981 la C.I. emitió otra resolución que le concedía al F.S.E. treinta (30) días para cerrar el caso. El 3 de septiembre de 1981 C.I.M.Co. solicitó a la C.I. que interviniese en el caso de los tres (3) obreros antes mencionados. El 6 de noviembre de 1981 C.I.M.Co. reiteró su solicitud de intervención y el 17 de febrero de 1982 la C.I. nuevamente conce-

---

[7] El F.S.E. argumenta en su alegato que la indicación en la resolución a que el F.S.E. determinase que los gastos eran razonables se refería a que la agencia no podía pagar hasta que C.I.M.Co. aportara prueba de que había incurrido en estos gastos.

dió al F.S.E. treinta (30) días para cumplir. El 22 de junio de 1982 C.I.M.Co. renovó su solicitud de cumplimiento y el 28 de junio la C.I. concedió treinta (30) días más al F.S.E., apercibiéndolo esta vez de que si no cumplía asumiría jurisdicción sobre el caso. El 5 de agosto de 1982, como el F.S.E. aún no había cumplido, C.I.M.Co. recurrió nuevamente a la C.I. para solicitar el cumplimiento. El 12 de mayo de 1983 C.I.M.Co. presentó ante la C.I. una moción para solicitar que asumiera jurisdicción y resolviera definitivamente el caso. El 31 de enero de 1985, ante la total inactividad, tanto de la C.I. como del F.S.E.; C.I.M.Co. presentó una petición de *mandamus* ante el Tribunal Superior, Sala de Ponce. El 12 de febrero de 1985 la C.I. emitió una orden para asumir jurisdicción en el caso(8) de Almodóvar Vargas y de los otros tres (3) obreros, y el 15 de marzo de 1985 ordenó al F.S.E. pagar a C.I.M.Co. $104,037.92 por concepto de gastos médicos incurridos, intereses legales sobre dicha cantidad a partir del 8 de junio de 1977, gastos y honorarios de abogado por temeridad, por la cantidad de $10,000. En esta resolución la C.I. consignó su:

> . . . reprobación e insatisfacción por la conducta contumaz, temeraria, negligente y dilatoria del Asegurador [F.S.E.] habida en el trámite de los casos de autos, la cual atenta contra los principios más elementales de lógica, sentido común, moral pública y JUSTICIA. Su "proceder desvirtúa el propósito de la Ley de Compensaciones y desperdicia esfuerzo y dinero que otros obreros necesitan". *Exhibit* C, pág. 72.

Nos hacemos eco de esta manifestación de preocupación y repudio.

No consta en los expedientes administrativos de estos casos que durante todo este tiempo el F.S.E. hiciera ges-

---

(8) Los expedientes de los obreros Ismael Texeira Marrero, Justo R. Texeira Marrero y Carlos Borrero comienzan con esta resolución o con las gestiones que condujeron a la misma.

tiones para verificar si los gastos reclamados habían sido pagados por un plan privado o por C.I.M.Co.

De esta última resolución el F.S.E. oportunamente solicitó reconsideración. Planteó que el caso no estaba completo "por cuanto las facturas y records médicos de los gastos médicos, cuyo reembolso se solicita no fueron presentados como prueba en la vista". *Exhibit* D, pág. 139. El 7 de agosto de 1985 la C.I. emitió una orden dirigida a C.I.M.Co. para que, en vista de que no surgía de los expedientes del caso evidencia alguna demostrativa del pago por parte del patrono, mostrara causa por la cual no se debía dejar sin efecto la resolución de 15 de marzo de 1985. El 26 de agosto de 1985 C.I.M.Co. presentó ante la C.I. una moción titulada "Moción en Cumplimiento de Orden", la cual acompañó con una serie de documentos. Entre éstos se encontraba una carta del Chase Manhattan Bank que respondía a una solicitud de C.I.M.Co. En ésta le informaba que no podía acceder a enviar las copias de los estados de cuenta y cheques solicitados porque el banco conservaba las microfichas por sólo siete (7) años.(9) También incluyó una declaración jurada de 13 de agosto de 1985 del Ayudante del Tesorero (*Assistant Treasurer*) de C.I.M.Co. que lee como sigue:

I. JOSEPH A. DI GIORGIO, being first duly sworn, do hereby depose and state as follows:

1. I am Assistant Treasurer of Catalytic Industrial Maintenance Company, Inc. (the "Company") and in such capacity I have custody of all the Company's records, including those relating to financial, tax and insurance matters. I have been an officer of the Company and/or its parent company, Catalytic, Inc., for more than ten (10) years and am familiar with the accident which occurred in Puerto Rico on December 15, 1975 in which Catalytic employees Justo R. Texeira, Ismael Texei-

---

(9) En su carta C.I.M.Co. solicitó copias de cheques con número, fecha, cantidad y persona o entidad a quienes se hacía el pago, relacionados con los gastos reclamados.

ra and Vincente Almodovar were seriously burned (the "accident").

2. Attached to this affidavit as Exhibit A is a true and correct copy of the excerpts from Field Accounts Payable Voucher Register (the "Register") for the Company for the months December, 1976, January, 1977, June, 1978 and March, 1979. *The Register was contemporaneously prepared by the Company's field accounting department in the ordinary course of business. The excerpts from the Register reflect expenses incurred by the Company, some of which relate to the accident. Specifically, the checks relating to the accident are as follows:*

| CHECK NO. | DATED | PAYEE | AMOUNT |
|---|---|---|---|
| 2695 | 11/29/76 | University of Texas | $32,526.54 |
| 2920 | 1/13/77 | Hospital Damas | 4,332.27 |
| 2939 | 1/14/77 | University of Texas | 78.46 |
| 2858 | 12/28/76 | University of Texas | 641.50 |
| 2866 | 12/29/76 | Pila Hospital | 22.50 |

*After a thorough search of the Company's files both in the home office, Philadelphia, PA, and at the site location in Puerto Rico, I have been unable to locate originals or copies of the Register for any of the months preceding November of 1976.*

3. Based on a review of Company documents other than the Register, I believe that prior to November, 1976 the Company incurred expenses relating to the accident. Attached to this affidavit as Exhibits B and C respectively are true and correct copies of hand-written reports prepared by Michaal F. Dashiell, Home Office Accountant responsible for the Company's accounts, and Thomas Troup, Home Office Insurance Administrator responsible for the Company's insurance matters. *Exhibit B was prepared by Mr. Dashiell in September of 1976 in the ordinary course of business based on original Company records such as the Register.* Likewise, Exhibit C was prepared by Mr. Troup early in 1977 in the ordinary course of business based upon the same or similar original Company records. *These exhibits indicate that prior to December of 1976 the Company incurred significant expenses*

*related to the accident, including a payment in February of*
*1976 to the University of Texas Hospital in the amount of*
*$34,360.22.*

*4. To the best of my knowledge and belief, the Company was*
*not reimbursed by any private or commercial insurance*
*company or any other third parties for any of the hospital or*
*medical expenses incurred by the Company in connection*
*with the accident. At the time of the accident, the Company's*
*only insurer was Liberty Mutual Insurance Company of*
*Boston, Massachusetts (hereinafter "Liberty Mutual").* At-
tached to this affidavit as Exhibit D is a true and correct copy
of a letter dated August 9, 1985 from T.W. Jones, Assistant
Vice-President for Liberty Mutual, attesting that Liberty
Mutual is not permitted to and does not write workers' com-
pensation coverage in Puerto Rico and made no payments to
or on behalf of the Company in connection with the accident.

5. I have made an exhaustive search of the Company's files
and have been unable to locate any documents other than
those attached hereto which would show whether the Com-
pany paid specific medical bills or other expenses relating to
this accident. In my opinion, the absence of such records is to
be expected in view of the Company's document destruction
policy.

6. Based on my review of the records and experience with
the Company, it is my understanding and belief that the Com-
pany made direct and unreimbursed payments of medical and
other expenses relating to the accident, including but not lim-
ited to, payments to the University of Texas Hospital of
$34,360.22 in February of 1976 and an additional payment of
$32,526.54 in November of 1976. (Énfasis suplido.) *Exhibit* C,
págs. 178–180.

Además, acompañó una carta de su única compañía de
seguros para la época del accidente, la Liberty Mutual In-
surance Company of Boston (en adelante Liberty Mutual).
Allí expresó que esta compañía de seguros no había hecho
pago alguno en relación con los gastos médicos y de hospital
de estos obreros. También suministró copia del registro de
comprobantes de cuentas a pagar de campo (*field accounts*
*payable voucher register*), un informe detallado a manus-

crito del Sr. Michael F. Dashiell sobre estos gastos y copia de los récord de gastos del John Sealy Hospital.

En su moción C.I.M.Co. solicitó que se tuviera por cumplida la orden de 7 de agosto de 1985 mostrando causa, que se mantuviese en vigor la decisión y orden de 15 de marzo de 1985, que se ordenase al F.S.E. a proceder al pago inmediato y que, de no efectuarse el pago, se acudiese al Tribunal Supremo a hacer cumplir dicha decisión.

El 11 de septiembre de 1986 la C.I. reconsideró y dejó sin efecto su resolución de 15 de marzo de 1985. Ordenó al Secretario de la C.I. señalar una vista "a los únicos efectos de recibir la evidencia que deben ofrecer las partes sobre el reembolso de [los] gasto[s] solicitado[s]". *Exhibit* L, pág. 300. Esta es la resolución que tenemos ante nuestra consideración.

### III

De un análisis integral de la totalidad del expediente en el caso del obrero Almodóvar Vargas, se puede razonablemente inferir que, a pesar de no constar en la actualidad en dicho expediente evidencia directa sobre los gastos incurridos reclamados, la misma se presentó ante los funcionarios del F.S.E. que evaluaron la reclamación y determinaron originalmente que la totalidad de la misma no procedía. Si la contención del F.S.E. era que la reclamación de C.I.M.Co. no procedía porque no se había presentado la evidencia necesaria para sostenerla, debió solicitar la reconsideración de la resolución de la C.I. de 1980 que ordenó el pago de la totalidad de los gastos reclamados en este caso. No podía cruzarse de brazos por casi cinco (5) años para luego, mediante moción a la C.I., expresar que estaba en espera de copia de las facturas pagadas por el patrono. La C.I. erró al reconsiderar su resolución de 15 de marzo de 1985, en cuanto a la reclamación relacionada con el obrero Almodóvar Vargas.

■ Cabe señalar, además, que aunque estuviéramos de acuerdo con el F.S.E. en cuanto a que C.I.M.Co. no presentó prueba del pago, este defecto quedó subsanado al C.I.M.Co. someter a la C.I. la moción de 7 de agosto de 1985, acompañada de evidencia suficiente para sostener los reembolsos.(10) Regla 65(F) de Evidencia, 32 L.P.R.A. Ap. IV; *H.R. Stationery, Inc. v. E.L.A.*, 119 D.P.R. 129 (1987).

## IV

Las reclamaciones de los otros tres (3) obreros presentan una pequeña variante. El F.S.E. nunca celebró vista ni hizo determinación alguna en relación con los reembolsos solicitados. Los expedientes que se elevaron a la C.I., y a base de los cuales la C.I. resolvió que procedía la reclamación, no contenían la evidencia necesaria para comprobar que los gastos fueron realmente incurridos por C.I.M.Co. Sin embargo, de la documentación que sí obra en dichos expedientes se puede razonablemente inferir que esta evidencia fue sometida al F.S.E. cuando se estaba tramitando la reclamación. Además, la evidencia que C.I.M.Co. acompañó con su moción de 7 agosto de 1985, era suficiente para sostener también estas reclamaciones.

■ La actitud de negligencia, dilación y temeridad demostrada por el F.S.E. fue lo que causó que estos casos no se

---

(10) También consta en los expedientes un "Consolidating Financial Statements as of September 30, 1976" de C.I.M.Co. preparado por la firma de contables Arthur Anderson, Co. La Nota Núm. 3 de este informe lee así:

"(3) *CLAIMS AND CONTINGENCIES*:

"As a result of an accident in December, 1975, which involved serious injuries and a number of fatalities, the Company incurred considerable expenses, principally related to care and treatment of affected employees. The Company has submitted claims to an agency of the government of Puerto Rico (approximating $130,000) for reimbursement of these expenses, of which approximately one-half is included in accounts receivable-other. In the opinion of management the full amount of these expenses (about $130,000) is reimbursable; however, the eventual resolution of the claims is not currently predictable." *Exhibit* F, pág. 285.

pudieran resolver cuando la prueba estaba fácilmente accesible. Quisiéramos consignar, además, que la conducta del F.S.E. contrasta con la diligencia desplegada por la recurrente C.I.M.Co. Ante estas circunstancias, principios de equidad impedirían que *después de prácticamente catorce (14) años de estar litigando una reclamación en los foros administrativos y judiciales, se le exigiese a una parte aportar prueba directa de los hechos, especialmente cuando con toda probabilidad ya le sea imposible conseguirla.*(11) *No hay justificación para que la adjudicación final en este caso haya tardado casi once (11) años.* "Este proceder desvirtúa el propósito de la Ley de Compensaci[ón por Accidentes del Trabajo] y desperdicia esfuerzos y dinero que otros obreros necesitan." *Rodríguez Febo v. F.S.E.*, 116 D.P.R. 31, 34 (1984). La conducta desplegada por el F.S.E. está reñida con los principios más elementales del debido proceso de ley, el juego limpio y la justicia sustancial. Recordemos que "el requisito de la buena fe es también exigencia general de nuestro derecho y que como tal *se extiende a la totalidad de nuestro ordenamiento jurídico*. El contenido de eticidad de cada acto deberá examinarse a la luz de sus circunstancias particulares, pero el *comportamiento conforme a la buena fe es precepto general que abarca toda actividad jurídica*". (Énfasis suplido.) *Velilla v. Pueblo Supermarkets, Inc.*, 111 D.P.R. 585, 587–588 (1981).

## V

Los honorarios de abogado y los intereses legales, concedidos a partir de 8 de junio de 1977 en la resolución de 15 de marzo de 1985, no proceden. Fundamentada en la doctrina de inmunidad soberana, la norma general es que no

---

(11) Del récord surge que tanto el Hospital John Sealy como el Chase Manhattan Bank informaron que ellos destruyen los récord después de siete (7) años.

procede la imposición de honorarios de abogado e intereses por temeridad contra el Estado. *Acevedo v. E.L.A.*, 91 D.P.R. 796 (1965); *Colondres Vélez v. Bayrón Vélez*, 114 D.P.R. 833, 838–841 (1983); *Rodríguez Cancel v. A.E.E.*, 116 D.P.R. 443, 459–462 (1985); *De León v. Sria. de Instrucción*, 116 D.P.R. 687, 688–689 (1985). Regla 44.3(b) de Procedimiento Civil, 32 L.P.R.A. Ap. III; Ley de Reclamaciones y Demandas contra el Estado, Ley Núm. 104 de 29 de junio de 1955, según enmendada, 32 L.P.R.A. secs. 3077–3084. Esta norma es aplicable tanto en el ámbito judicial como en el administrativo. Para propósito de estas disposiciones, el F.S.E. es una instrumentalidad del Estado Libre Asociado de Puerto Rico y, salvo disposición expresa en contrario, no procede ni la imposición de honorarios de abogado ni los intereses por temeridad. En relación con el pago de honorarios de abogado, el esquema de la Ley de Compensaciones por Accidentes del Trabajo, Art. 35 (11 L.P.R.A. sec. 36), sólo autoriza al F.S.E. a sufragar los honorarios de los abogados de los beneficiarios. *Wiscovitch v. Comisión Industrial*, 99 D.P.R. 651 (1971); *Herrera Ramos v. Comisión Industrial*, 108 D.P.R. 316 (1979).

## VI

Por todo lo antes expuesto, *se dictará sentencia revocatoria de la resolución de la C.I. de 11 de septiembre de 1986, que modificaba la resolución de la C.I. de 15 de marzo de 1985, para eliminar la cantidad concedida por concepto de honorarios de abogado y la imposición de intereses legales por temeridad y devolver el caso al F.S.E. para que proceda, de forma compatible con esta opinión, a dar cumplimiento inmediato a la resolución de 15 de marzo de 1985 de la C.I.*

El Juez Asociado Señor Rebollo López concurre con el resultado sin opinión escrita. El Juez Asociado Señor Ortiz disiente de la Parte V de la opinión. El Juez Asociado Señor Negrón García no intervino.