# 99 DTA 135

### TRIBUNAL DE CIRCUITO DE APELACIONES
### CIRCUITO REGIONAL V DE PONCE Y AIBONITO

MARIA L. QUIÑONES FELIX, SILVIA LUGO TORRES
Querellantes-Recurrentes

v .

MIGUEL A. RODRIGUEZ H/N/C RODRIGUEZ AUTO SALES, BANCO FINANCIERO DE P.R.
Querellados-Recurridos

Núm. KLRA-98-00785

-----------------------------------------------

MARIA L. QUIÑONES FELIX, SILVIA LUGO TORRES
Querellantes-Recurrentes

v.

MIGUEL A. RODRIGUEZ H/N/C RODRIGUEZ
AUTO SALES, BANCO FINANCIERO DE P.R.
Querellados-Recurridos

Núm. KLRA-99-00044

San Juan, Puerto Rico, a 23 de marzo de 1999

Panel integrado por su Presidente, el Juez Negrón Soto
y los Jueces Negroni Cintrón y Segarra Olivero

Negrón Soto, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

Mediante el recurso de revisión administrativa consolidado que nos ocupa, las señoras María L. Quiñones Félix y Silvia Lugo Torres, en lo sucesivo recurrentes, nos solicitan que revisemos unas resoluciones dictadas por el Departamento de Asuntos del Consumidor, en adetante el DACO, el 29 de octubre y el 29 de diciembre de 1998. En la primera resolución recurrida, el DACO desestimó una querella presentada por las recurrentes contra el Banco Financiero de Puerto Rico *("Banco")* y ordenó a Rodríguez Auto Sales *("Dealer")* restituir a Silvia Lugo Torres la cantidad de tres mil dólares ($3,000). En la segunda resolución, declaró No Ha Lugar la moción de reconsideración al anterior dictamen presentada oportunamente por las recurrentes. █

Considerados los escritos de las partes y la jurisprudencia aplicable, denegamos la expedición de este recurso por los fundamentos que exponemos a continuación. Examinemos los hechos pertinentes, según se desprenden de la resolución recurrida de la Oficial Examinadora del DACO.

El 13 de septiembre de 1997, Silvia Lugo Torres (Sra. Lugo) compró un Dodge Daytona del 1988 por la cantidad de seis mil dólares ($6,000) al *"Dealer"*. Entregó su automóvil Honda Civic del 1986 en *"trade in"*, █ razón por la cual el *"Dealer"* le acreditó dos mil quinientos dólares ($2,500). La diferencia del valor

ascendente a tres mil quinientos dólares ($3,500) fue financiada por el *"Banco"*.

Durante el primer mes que manejó su auto nuevo, la Sra. Lugo incurrió en gastos de aproximadamente setecientos cincuenta dólares ($750) en reparaciones *"infructuosas"*. Por tal razón el *"Dealer"* quedó en reembolsarle a la Sra. Lugo la cantidad de quinientos dólares ($500) por ese concepto el 17 de octubre de 1997, a la vez que canceló el contrato de financiamiento con el *"Banco"*. El *"Dealer"* aceptó el automóvil marca Dodge Daytona de vuelta y le dio a escoger a la Sra. Lugo otro vehículo de similar valor. Acordaron, entonces, que se le acreditarían los dos mil quinientos dólares ($2,500) del *"trade in"* del Honda que había dado para el primer automóvil, y dichos quinientos dólares ($500) de las reparaciones *"infructuosas"* como pronto de pago recibido, ▮ de un Nissan Sentra, cuyo precio era seis mil quinientos dólares ($6,500). El *"Dealer"* entregó este automóvil a la Sra. Lugo, sin haberse otorgado otro contrato de financiamiento.

Posteriormente, los oficiales del *"Dealer"* y del *"Banco"* notificaron a la Sra. Lugo que compareciera a firmar el nuevo contrato de financiamiento. Al recibir la Sra. Lugo el contrato en blanco exigió que éste tuviera todas sus partes cumplimentadas. Para su sorpresa, el *"Dealer"* sólo hizo constar que el valor del Honda para darse como pronto era de mil quinientos dólares ($1,500). De esta manera el *"Dealer"* alteró unilateralmente el acuerdo entre las partes, por lo que la Sra. Lugo le entregó el automóvil Nissan Sentra y entonces las recurrentes presentaron una querella ante el DACO el 4 de noviembre 1997. El *"Dealer"* no le ha devuelto a las recurrentes el dinero que éstas le habían entregado, a saber los dos mil quinientos dólares ($2,500) del *"trade in"* ni los quinientos dólares ($500) del reembolso por las reparaciones del Dodge Daytona.

Luego de varios trámites procesales, mediante resolución del DACO emitida y notificada el 29 de octubre de 1998, se ordenó al *"Dealer"* restituir esos tres mil dólares ($3,000) y desestimó la querella en contra del *"Banco"*. Las recurrentes presentaron oportunamente una moción de reconsideración el 16 de noviembre de 1998, la cual fue acogida por DACO mediante resolución de 2 de diciembre, o sea, el día siguiente de vencer el término dispuesto en la Sección 3.15 de la Ley Núm. 170 de 12 de agosto de 1988, según enmendada por la Ley Núm. 247 de 25 de diciembre de 1995, conocida como la Ley de Procedimiento Administrativo Uniforme (LPAU), 3 L.P.R.A. sec. 2165. Dicha moción de reconsideración fue resuelta por DACO mediante resolución de 29 de diciembre de 1998. Sin haber recibido este dictamen, el 30 de diciembre de 1998 las recurrentes presentaron el primer escrito de revisión (Núm. KLRA-98-00785). Luego de recibir la Resolución en la que se declaró sin lugar su solicitud de reconsideración, las recurrentes presentaron una segunda petición de revisión (Núm. KLRA-99-00044). A petición de las partes consolidamos estos recursos. Habiendo el *"Banco"* presentado su alegato estamos en posición de resolver.

En el primer escrito de revisión las recurrentes imputaron a DACO que cometió error:

*"1. al desestimar la acción en contra del querellado Banco Financiero de Puerto Rico, mientras declara la resolución del contrato entre las partes, siendo dicho Banco parte contratante en el mismo, que al resolverse el contrato queda obligado a restituir [sic] a la querellante las prestaciones."*

En el segundo recurso alegaron ese mismo error y añaden que DACO erró al:

*"1. emitir resolución en reconsideración cuando había perdido la jurisdicción para acoger la moción de reconsideración...".*

No les asiste la razón.

## II

El DACO no carecía de jurisdicción para acoger la moción de reconsideración presentada por las recurrentes según éstas alegan. La Regla 30.3 de las de Procedimientos Adjudicativos del DACO, Reglamento Núm. 5416, Ley Núm. 5 de 23 de abril de 1973, según enmendada, dispone que esta agencia podrá reconsiderar sus resoluciones a iniciativa propia antes de que expire el término para radicar la revisión judicial. Además, reiteradamente nuestro Tribunal Supremo ha expresado que es norma de derecho que los organismos administrativos, al igual que los foros judiciales, tienen la facultad para enmendar y aclarar sus órdenes y resoluciones de acuerdo con lo que la justicia y la razón dicten, siempre y cuando no haya perdido jurisdicción. *Kelly Temporary Services v. F.S.E.,* **97 JTS 5,** citando a *Aponte Correa v. Policía de P.R.,* **96 JTS 157**. Por ello, DACO podía acoger una solicitud de reconsideración oportunamente presentada por la parte afectada por una decisión administrativa ante el caso de autos.

La agencia pierde su jurisdicción sobre la moción de reconsideración presentada cuando la parte presenta el recurso de revisión judicial. Para esto tiene treinta (30) días a partir de la notificación de la resolución de la decisión de la agencia administrativa. En el caso de marras, aunque DACO acogió la moción de reconsideración presentada por las recurrentes un día tarde, o sea a los dieciséis (16) días de haberse radicado, la resolvió oportunamente el 29 de diciembre de 1998 conforme a lo dispuesto en la Sección 3.15 de LPAU, *ibid,* por lo que actuó con jurisdicción. Como las recurrentes presentaron ambos recursos de revisión luego de haberse resuelto dicha reconsideración, también este Tribunal tiene jurisdicción.

Finalmente, es doctrina reiterada que las decisiones administrativas gozan de una presunción de regularidad y corrección y que nuestra intervención con las mismas está limitada por la ley y la jurisprudencia. Ley Núm. 170 de 12 de agosto de 1988, conocida como la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2101 *et seq.; Misión Industrial de P.R. v. Junta de Planificación,* **98 JTS 79;** *Misión Industrial de P.R. v. Junta de Planificación,* **97 JTS 34;** *Maisonet Felicié v. F.S.E.,* **96 JTS 169;** *Facultad para las Ciencias Sociales v. C. E.E.,* **93 JTS 88;** *Henríquez v. C.E.S.,* 120 D.P.R. 194, 210 (1987*); M. B. & S. v. Departamento,* 118 D.P.R. 317, 331 (1987); *Murphy Bernabe v. Tribunal Superior,* 103 D.P.R. 692, 699 (1975). En consecuencia, las conclusiones e interpretaciones de los organismos administrativos especializados merecen gran consideración y respeto, por lo que el ejercicio de nuestra función revisora está limitado a determinar si la agencia actuó arbitraria, ilegal o tan irrazonablemente que su actuación constituyó un abuso de discreción. *Misión Industrial de P.R. v. Junta de Planificación, supra; Reyes Salcedo v. Policía de P.R.,* **97 JTS 58;** *Facultad para las Ciencias Sociales v. C.E.E., supra; Fuertes y otros v. A.R.P.E.,* **93 JTS 165;** *Murphy Bernabe v. Tribunal Superior, supra.* Esto se cumple cuando se encuentra una base racional en el récord administrativo para sostener las conclusiones de la agencia, sin sustituir el criterio del tribunal por el de la agencia administrativa. *Misión Industrial de P.R. v. Junta de Planificación, supra; Metropolitana, S.E. v. A.R.P.E.,* **95 JTS 39;** *Hilton Hotels Intl. v. Junta de Salario Mínimo,* 74 D.P.R. 670, 703 (1953).

Lo anterior impone en quien impugna la decisión administrativa el deber de probar que se ha actuado en forma caprichosa, arbitraria o en clara violación de los derechos constitucionales fundamentales. Al que recurre de una decisión administrativa le corresponde el peso de establecer en su recurso que no existe base racional que sostenga la decisión que es objeto de impugnación. *Catalytic Ind. Mant. Co. v. F.S.E.,* 121 D.P.R. 98, 102 (1988); *Henríquez v. C.E.S., supra.*

A tenor con esta perspectiva, el Reglamento de este Foro dispone los criterios para determinar si se expide un auto de revisión, a saber: si el remedio y la disposición de la orden, resolución o decisión recurrida, a diferencia de sus fundamentos, son contrarias a derecho, o producto de una actuación arbitraria, ilegal o irrazonable; si la decisión recurrida no está apoyada por evidencia sustancial; si la expedición del auto evita el fracaso de la justicia. Regla 66 del Reglamento del Tribunal del Circuito de Apetaciones, 4 L.P.R.A. Ap. XXII-

A.

Los hechos en el caso de marras revelan claramente que el *"Banco"* canceló el financiamiento del primer automóvil de las recurrentes, el Dodge Daytona, y no le está reclamando nada a éstas, ya que el acuerdo al que llegaron el *"Dealer"* y la Sra. Lugo en cuanto al segundo vehículo no tiene relación alguna con el *"Banco"*. Así, éste no recibió los dos mil quinientos dólares ($2,500), que las recurrentes pagaron al *"Dealer"* ni tampoco respondía por ninguna parte de los tres mil dólares ($3,000) que el *"Dealer"* quedó en reembolsar a las recurrentes, los que inexplicablemente no les ha pagado. Por tal razón, este recurso es frívolo y estamos obligados a imponerle sanciones a las recurrentes y a su abogado en forma solidaria, conforme a lo ordenado en la Regla 85 de nuestro Reglamento, *ibid.*

### III

Por los fundamentos anteriormente expuestos, denegamos la expedición de los autos de revisión aquí consolidados y se le impone a las recurrentes y a su abogado en forma solidaria el pago de doscientos dólares ($200) por concepto de honorarios de abogado a favor del Estado Libre Asociado de Puerto Rico, los cuales deberán cancelar en sellos de Rentas Internas dentro del término de diez (10) días siguientes a que esta Resolución advenga final y firme.

Así lo acuerda el Tribunal y lo certifica la Secretaria General.

Aida Ileana Oquendo Graulau
Secretaria General

**ESCOLIOS 99 DTA 135**

**1.** Las recurrentes presentaron una Moción de Reconsideración el 16 de noviembre de 1998, la cual fue acogida por el DACO mediante resolución de 2 de diciembre de 1998, un día después de entenderse como rechazada de plano. Esto será objeto de discusión más adelante en esta Resolución.

**2.** Este término significa en español lo siguiente: trueque, objeto dado como pago parcial para la compra de otro similar. Mariano Velázquez de la Cadena, *New Revised Velázquez Spanish and English Dictionary*, Clinton, N.J., New Win Publishing, Inc., 1985, pág. 696.

**3.** Ambas cantidades, que suman tres mil dólares ($3,000), se usarían como el pronto de pago del automóvil Nissan Sentra.