Segarra Olivero, Juez Ponente
*906 TEXTO COMPLETO DE LA RESOLUCION
El señor Herminio Cortés Díaz y el ingeniero Juan Torres Laó, en lo sucesivo los recurrentes, nos solicitan la revisión de una resolución de la Junta de Planificación del Estado Libre Asociado de Puerto Rico (la Junta), mediante la cual se reafirmó la denegatoria a la Consulta Número 98-620065JPU-S para la formación de siete (7) solares en la finca del recurrente, el señor Cortés Díaz, en el Municipio de Peñuelas.
Luego de estudiar el expediente administrativo, los planteamientos de las partes, la doctrina y la jurisprudencia interpretativa aplicable, denegamos la expedición del auto solicitado.
I
Los recurrentes presentaron ante la Junta una solicitud de una consulta de ubicación para la formación de siete (7) solares en la Carretera Estatal Número 123, Ramal 10, Kilómetro 2.1, Barrio Quebrada Ceiba en el Municipio de Peñuelas. La finca en que se propone el proyecto, la cual es propiedad del recurrente, está delimitada por el Norte, con terrenos propiedad del señor Cecilio Quiñones; por el Sur y Este, con terrenos propiedad de un propietario particular; y por el Oeste, con una quebrada. Los lotes que se proponen segregar tienen cabidas que fluctúan desde 1207.2804 hasta 1945.8723 metros cuadrados. La finca matriz tiene una cabida de 22.4 cuerdas, según mensura, pero conforme el Registro de la Propiedad, tiene una cabida de 22.1 cuerdas. Además, surge de la resolución recurrida que no existen en las cercanías desarrollos similares aprobados por la Junta, según los mapas topográficos y el archivo gráfico. Los terrenos en controversia radican fuera de los límites del área zonificada del municipio de Peñuelas.
La Junta entiende que la propuesta solicitada está en desacuerdo con los Objetivos y Politicas Públicas del Plano de Usos y Terrenos de Puerto Rico, en los siguientes aspectos:

“a) Objetivo LOO

La Junta de Planificación tiene como objetivo el ordenar y guiar el crecimiento físico-espacial de las áreas urbanas en Puerto Rico. La Junta deberá velar el que se provean terrenos suficientes y adecuados para acomodar el crecimiento poblacional a tono con la necesidad de cada municipio.

b) Objetivo 1.02

La Junta de Planificación deberá evitar y desalentar el desparramiento urbano y el desarrollo de núcleos 
*907
urbanos aislados.

c) Objetivo 2.01 No permitir ubicaciones en terrenos desprovistos de infraestructura o donde no sea viable proveer la misma. ”

Por lo anteriormente expuesto, la Junta denegó la Consulta Número 98-62-0065-JPU-S. El recurrente le imputa a la Junta que erró al determinar que:

“1)- no existen desarrollos similares en áreas cercanas a la finca que es objeto de la Consulta de ubicación no obstante, no ser éstas aprobadas por la Junta de Planificación de Puerto Rico, y sí por la Administración de Reglamentos y Permisos.

2)- la infraestructura (entiéndase abasto de agua, energía eléctrica y accesos adecuados) es insuficiente y que de aprobarse la Consulta de ubicación contribuiría a la formación de núcleos aislados y dispersos dificultando y encareciendo la provisión de estos servicios públicos.

3)- la Consulta de ubicación propuesta está en desacuerdo con los Objetivos y Políticas Públicas del Plan de Uso de Terrenos de Puerto Rico.

4)- la Consulta de ubicación propuesta no es viable por las siguientes razones:

1. Las cabidas propuestas no armonizan con las prevalecientes en el sector.

2. El desarrollo propuesto causaría presión y establecería precedentes de desarrollo indebido en el sector.

3. El desarrollo propuesto causaría un efecto acumulativo adverso sobre la infraestructura existente en el sector.

5)- y actuar fuera de su discreción administrativa, al denegar una Consulta de ubicación que cuenta con los endosos de la Autoridad de Acueductos y Alcantarillados y la Autoridad de Energía Eléctrica quienes son las agencias con el “expertise” para determinar sobre la suficiencia de su infraestructura para proyectos como el de autos y quienes endosaron la Consulta de ubicación solicitada por el recurrente. La Junta de Planificación actuó arbitrariamente al denegar la Consulta de Ubicación del recurrente, y en abuso de la facultad discrecional que requiere una Consulta de Ubicación de naturaleza adjudicativa, como la de autos. ”

Hemos examinado el expediente administrativo, el cual solicitamos mediante resolución del 22 de abril de 1999. Estamos en posición de resolver. Expongamos el derecho aplicable a la controversia del caso de autos.
H
Es doctrina firmemente establecida que los procedimientos y decisiones ante un organismo administrativo tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que las impugne no produzca evidencia suficiente para derrotarlas o impugnarlas. La Facultad para las Ciencias Aplicadas, Inc. v. Consejo de Educación Superior, _ D.P.R. _ (1993), 93 J.T.S. 88; Catalytic Ind. Maint. v. F.S.E., 121 D.P.R. 98, 102 (1988); Henríquez v. Consejo Educación Superior, 120 D.P.R. 194, 210 (1987); M. & B. S., Inc. v. Depto. de Agricultura, 118 D.P.R. 319, 331 (1987).
Como regla general los tribunales miran con deferencia las determinaciones de hechos y las interpretaciones de la ley cuya Administración le fue encomendada por la Legislatura, efectuadas, por las *908 agendas administrativas. Se presume que la agenda posee un conodmiento espedalizado en los asuntos que les han sido encomendados, por lo que la función de un tribunal revisor se limita a determinar si la interpretación o actuación administrativa fue razonable y cónsona con el propósito legislativo o si, por el contrario, fue irrazonable, ilegal o si medió abuso de discreción T-JAC, Inc. (Wal-Mart Caguas) v. Caguas Limited Partnership, S.E., _ D.P.R. _ (1999), 99 J.T.S. 60, a la pág. 884; Rivera Rentas v. A & C Dev. Corp., _ D.P.R. _ (1997), 97 J.T.S. 143, a la pág. 344. Por esta razón, debemos ser cautelosos en intervenir con dichas determinaciones. Fuertes v. A.R.P.E., _ D.P.R. _ (1993), 93 J.T.S. 165, a la pág. 11385; Viajes Gallardo v. Clavell, 131 D.P.R. 275, 290 (1992).
La Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. see. 2175, trata sobre el alcance de la revisión judicial y en cuanto a las determinaciones de hechos de la agencia que establece que las mismas serán sostenidas por el tribunal si se basan en evidencia sustancial que obra en el expediente administrativo.
Reiteradamente ha sido resuelto que para que un tribunal pueda decidir si la determinación de una agencia no está basada en evidencia sustancial, es necesario que el recurrente apunte y demuestre que existe otra prueba en el récord que claramente reduce o menoscaba el peso de tal evidencia, hasta el punto de que el tribunal pueda concluir que la agencia file arbitraria y su decisión no estuvo justificada por una evaluación justa de la prueba que tuvo ante su consideración. Hilton Hotels v. Junta de Salario Mínimo, 74 D.P.R. 670, 686 (1953). Nuestro Tribunal Supremo ha definido la evidencia sustancial como evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión. Associates Insurance Agencies. Inc. v. Comisionado de Seguros, _ D.P.R. _ (1997), 97 J.T.S. 142, a la pág. 331; Hilton Hotels v. Junta Salario Mínimo, supra. Consecuentemente, para convencer al tribunal de que la evidencia en la cual se basó la agencia para formular una determinación de hecho no es sustancial, la parte afectada debe demostrar que existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración. Metropolitana, S.E. (ATRIUM PLAZA) v. A.R.P.E., _ D.P.R. _ (1995), 95 J.T.S. 39, a la pág. 767.
La presunción de corrección y regularidad de las determinaciones de hechos y los remedios ordenados por un organismo administrativo en el ejercicio de su jurisdicción deben ser respetados por los tribunales. Debemos conferirle la mayor deferencia a las decisiones de los organismos administrativos, a menos que el recurrente que las cuestione demuestre que las mismas son arbitrarias. Henríquez v. Consejo Educación Superior, supra; Murphy Bernabé v. Tribunal Superior, 103 D.P.R. 692 (1973). Por tanto la revisión judicial se limitará a determinar si la agencia actuó arbitraria o ilegalmente o en forma tan irrazonable que su actuación constituyó un abuso de discreción. Murphy Bernabé v. Tribunal Superior, supra, a la pág. 699; Fuertes v. A.R.P.E., supra.
Los tribunales deben limitarse a indagar sobre la razonabilidad de las determinaciones administrativas y no deben sustituirlas por su propio criterio. La Facultad Para las Ciencias Sociales Aplicadas, Inc. v. Consejo de Educación Superior, supra; Silva v. Adm. Sistemas de Retiro, 128 D.P.R. 256 (1991).
Por otro lado, la Junta de Planificación es la agencia gubernamental encargada de adoptar e implantar la política pública en todo aquello relacionado con el desarrollo integral y balanceado de Puerto Rico. Asociación de Residentes de Park Side, Inc. v. Junta de Planificación, _ D.P.R. _ (1998), 98 J.T.S. 156, a la pág. 380; Misión industrial v. Junta de Planificación, _ D.P.R. _ (1998), 98 J.T.S. 79, a la pág. 1155. La Ley Orgánica de la Junta de Planificación, Ley Núm. 75 de 24 de junio de 1975, según enmendada, dispone en su Artículo 11, inciso 14, 23 L.P.R.A. sec. 62j (14), que la Junta deberá hacer determinaciones sobre usos de *909 terrenos dentro de los límites territoriales del Estado Libre Asociado de Puerto Rico, con sujeción a las normas y requisitos consignados en esta ley o cualquier otra ley aplicable para tales casos. 
La consulta de ubicación es el instrumento mediante el cual la Junta organiza el uso particular de un terreno. Dicho procedimiento está gobernado específicamente por la Ley Orgánica de la Junta de Planificación, supra, en sus Artículos 1-39, 23 L.P.R.A. secs. 62-63j (1987 y Supl. 1997) y el Reglamento para Procedimientos Adjudicativos de la Junta de Planificación, (Reglamento), Reglamento 5244 de 31 de mayo de 1995. El Reglamento define la consulta de ubicación como:
“[el] trámite mediante el cual la Junta de Planificación evalúa y decide según estime pertinente, sobre propuestos usos de terreno que no son permitidos ministerialmente por la reglamentación aplicable en áreas zonificadas pero que las disposiciones reglamentarias proveen para que se consideren. En áreas no zonificadas incluye propuestos usos de terrenos que por su naturaleza, complejidad, magnitud, impacto físico, económico, ambiental y social que pudiesen afectar significativamente el desarrollo de un sector.” Comité de Vecinos Pro-Mejoramiento. Inc. v. Junta de Planificación, _ D.P.R. _ (1999), B, a la pág. 732.
En el ejercicio de esta facultad, la Junta tiene gran discreción, pero ciertamente no es un cheque en blanco, ya que está sujeta a las normas y requisitos consignados en la ley. Por ello, ésta no puede obviar sus propios estatutos en cuanto al uso de terrenos. T-JAC. Inc. (Wal-Mart Caguas) v. Caguas Limited Partnership, S.E., supra, a la pág. 886.
El Reglamento indica que los proyectos en áreas no zonificadas que requieren pasar por el proceso de ubicación ante la Junta son:
"... [aquellos] cuya naturaleza y magnitud tienen un impacto significativo en el ámbito físico, económico y social del sector en que ha de ubicarse como resultado de lo cual puede esperarse un cambio en los patrones de conducta general de ese sector (aumento o disminución poblacional, cambio en las actividades de producción, consumo y servicios, cambios en el desarrollo físico del sector, incluyendo el grado de contaminación del ambiente)... ” 23 R.P.R. sec. 650.228(2).
La Junta considera los siguientes factores y elementos de juicio para estudiar y resolver las consultas de ubicación Aquellos cuya consideración dispone la Ley Orgánica de la Junta, la Ley de Municipios Autónomos, Plan de Desarrollo Integral, Objetivos y Políticas Públicas del Plan de Uso de Terrenos, Mapas de Zonificación, localización específica del proyecto, usos existentes en el sector, situación de la infraestructura física y social del lugar, rasgos topográficos, condición de inundabilidad, condición del subsuelo, densidad poblacional, grado de contaminación del ambiente, distancia entre los terrenos y las áreas construidas, importancia agrícola, ambiental o turística de los terrenos y otras condiciones sociales, económicas y físicas análogas. Véase la Sección 7.01 del Reglamento para Procedimientos Adjudicativos de la Junta de Planificación. T-JAC. Inc. (Wal-Mart Caguas) v. Caguas Limited Partnership, S.E., supra, a las págs. 886-887.
Las agencias administrativas están obligadas a observar estrictamente las reglas que ellas mismas promulgan. García Pagán v. U.P.R., 120 D.P.R. 167, 175 (1987). Una vez se ha adoptado una norma, la agencia administrativa debe cumplirla en la manera en que está concebida, sirviendo siempre a los propósitos, objetivos y política pública que la foijaron. T-JAC. Inc. (Wal-Mart Caguas) v. Caguas Centrum Limited Partnership, S.E., supra, a la pág. 884.
Ill
Por estar todos los errores señalados por los recurrentes estrechamente relacionados con la apreciación de *910 la prueba que tuvo ante sí la Junta, los discutiremos conjuntamente. Aplicando los principios de deferencia que un tribunal apelativo deberá tenerle a una decisión de una agencia administrativa, según mencionamos anteriormente, concluimos que la Junta no erró al denegar la consulta solicitada por los recurrentes. El recurrente no nos ha puesto en posición de intervenir con las determinaciones del foro administrativo, las cuales encuentran apoyo sustancial en los autos del caso.
En algunos sectores rurales de Puerto Rico la infraestructura (abasto de agua, energía eléctrica, alcantarillado sanitario, accesos adecuados, etc.) es insuficiente, por lo que la aprobación de desarrollos adicionales y de otro tipo en esos sectores contribuiría a la formación de núcleos aislados y dispersos. Esto dificultaría y encarecería la provisión de los servicios públicos señalados, según expone atinadamente la resolución recurrida. Reiteramos que debemos concederle deferencia a las recomendaciones de la Junta, ya que ésta es un organismo administrativo altamente especializado que posee amplio conocimiento sobre la materia objeto de revisión.
El recurrente aduce que la Junta está poniendo trabas para que los ciudadanos de este país puedan tener viviendas. No nos persuade su argumento. Una vivienda de más de mil (1,000) metros cuadrados no es la vivienda del típico ciudadano puertorriqueño. No se nos ha explicado como siete (7) viviendas en solares de más de mil (1,000) metros habrían de resolver el problema de vivienda de las familias del pueblo de Peñuelas.
El recurrente expone en su alegato que las áreas que rodean los solares que se van a segregar no se están usando para la ganadería. Sin embargo, la recurrida expone (y presenta documentos para fundamentar su posición que el lugar tiene un gran valor agrícola. En carta de 26 de febrero de 1998, el Departamento de Agricultura le recomendó a la Junta que no autorizara la consulta por el fundamento de la política pública sobre usos de terreno. Véase Anejo IV, página 11 del Escrito de Oposición. Entiende el Departamento de Agricultura que la finca objeto de la segregación solicitada tiene potencial para la ganadería debido a su amplia cabida y la baja densidad poblacional del área. Señala en su recomendación que si se aprobara el proyecto propuesto el desarrollo agrícola del sector resultaría afectado adversamente, ya que se incrementaría la presión de desarrollo residencial sobre la finca de referencia y las fincas aledañas dedicadas a la crianza de ganado. No perdamos de vista que la agencia anteriormente mencionada posee vasto conocimiento sobre el asunto que nos ocupa. Tengamos presente, además, que ante la alta densidad poblacional de nuestro país y su limitada extensión territorial, la conservación, preservación y uso de los terrenos agrícolas es un valor preeminente.
Cabe mencionar que la recurrida presentó en el apéndice de su escrito dos resoluciones (una de 6 de julio de 1990, notificada el 19 del mismo mes, y otra del 26 de junio de 1996, notificada el 24 de julio del mismo año) mediante las cuales denegó unas consultas solicitadas en esa área. Estas son pertinentes para demostrar que la Junta ha sido consecuente en denegar proyectos en esa área por el efecto acumulativo adverso sobre la infraestructura, y de la presión y precedente que ejercerían en un sinnúmero de fincas en el sector, la aprobación de las consultas solicitadas. Véase, Escrito de Oposición, pág. 6. No hay duda que la infraestructura que existe en el área se va a sobrecargar con los solares que se pretenden segregar, a los ya anteriormente segregados de la misma finca matriz. 
Luego de analizada la controversia ante nos a la luz de los principios del derecho administrativo anteriormente reseñados, entendemos que el recurrente no nos ha puesto en posición de resolver a su favor. No nos ha demostrado que la Junta haya actuado con pasión, prejuicio o parcialidad, ni que haya abusado de su discreción. Las determinaciones de hecho de la resolución recurrida están sostenidas por evidencia sustancial en el expediente administrativo, por lo que no intervendremos con la apreciación de la prueba que hizo la Junta, ni mucho menos sustituiremos su criterio con el nuestro.
*911 IV
Por los fundamentos anteriormente expuestos denegamos la expedición del auto solicitado.
Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.
Aida Ileana Oquendo Graulau
Secretaria General
ESCOLIOS 2000 DTA 47
1. A la luz de las disposiciones estatutarias de la Ley Núm. 75 y de la Ley de Procedimientos Administrativo Uniforme (L. P.A.U.), Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. see. 2101 et seq., la Junta adoptó el Reglamento para Procedimientos Adjudicativos (Reglamento), que entró en vigor el 23 de noviembre de 1989. El propósito de este Reglamento era establecer —a la luz de las exigencias de la Ley Núm. 170, supra,— las normas mínimas que guiarían los procedimientos adjudicativos en la Junta. Estos serían de aplicación a los procedimientos tales como las consultas. Comité de Vecinos Pro-Mejoramiento Inc. v. Junta de Planificación de P.R., _ D.P.R. _ (1999), 99 J.T.S. 32, a la pág. 731.
2. La finca matriz fue objeto de una segregación anterior. La Administración de Reglamentos y Permisos (A.R.P.E.) aprobó la segregación de nueve (9) lotes, aunque previamente le requirió al recurrente los endosos de la Autoridad de Energía Eléctrica, la Autoridad de Acueductos y Alcantarillados y el Gobierno Municipal de Peñuelas.