# 99 DTA 163

**TRIBUNAL DE CIRCUITO DE APELACIONES
CIRCUITO REGIONAL DE PONCE Y AIBONITO
PANEL I**

MIGUEL A. PABON APONTE Y OTROS
Apelantes-Recurrentes

v.

MUNICIPIO DE GUANICA
Apelado-Recurrido

JUNTA DE APELACIONES DEL SISTEMA DE ADMINISTRACION DE PERSONAL (J.A.S.A.P.)

Núm. KLRA-96-00070

San Juan, Puerto Rico, a 13 de mayo de 1999

Panel integrado por su Presidente, Juez Negrón Soto
y los Jueces Aponte Jiménez y Segarra Olivero

Segarra Olivero, Juez Ponente

**TEXTO COMPLETO DE LA RESOLUCION**

Mediante el recurso del título, Miguel A. Pabón Aponte y otros diecinueve (19) empleados cesanteados por el Municipio de Guánica, en adelante los recurrentes, nos solicitan que revoquemos una resolución de la Junta de Apelaciones del Sistema de Administración de Personal, en adelante J.A.S.A.P., dictada el 19 de abril de 1996 y archivada en autos el 29 de abril. En dicha resolución la J.A.S.A.P. declaró ha lugar las apelaciones de los empleados cesanteados, Clemente Vázquez Lugo, Gabriel Casiano Carbonell, Cristóbal Rivera Vega y Alcides Rosario Pérez; ▬ las restantes apelaciones las declaró no ha lugar. El 14 de mayo de 1996 los recurrentes solicitaron reconsideración, la cual fue denegada mediante resolución de 22 de mayo de 1996 y archivada en autos el 23 de mayo siguiente. ▬

Entienden los recurrentes que la resolución emitida es contraria a la prueba desfilada y al derecho aplicable por lo que las cesantías son nulas. En su escrito de revisión éstos formulan los siguientes señalamientos de error:

*"(1) Erró la Honorable Junta del Sistema de Administración de Personal al concluir como concluyó que las cesantías de los apelantes-recurrentes fueron decretadas por falta de trabajo.*

*(2) Erró la Honorable Junta de Apelaciones de Administración de Personal (J.A.S.A.P.) al no resolver que conforme a lo resuelto por el Honorable Tribunal Supremo de Puerto Rico en Marina Calzada v. D.A.C.O., 114 D. P.R. 157 (1983), las cesantías decretadas contra los apelantes-recurrentes fueron nulas."*

Luego de haber examinado el expediente del recurso, la transcripción de la vista administrativa, ▬ la jurisprudencia y las leyes y reglamentos aplicables a las controversias del caso de marras, denegamos la expedición del auto por los fundamentos que exponemos a continuación.

**I**

El Municipio de Guánica, en adelante el Municipio, notificó a los recurrentes mediarte carta el 26 de agosto de 1994, que serían cesanteados de sus empleos efectivo el 26 de septiembre del mismo año. Los recurrentes ocupaban puestos de carrera como conductores, obreros y conductores de equipo pesado adscritos al Departamento de Obras Públicas Municipal. ▬ La mayoría de ellos trabajaban en la División de Desperdicios Sólidos. La decisión del Municipio de cesantear a estos empleados obedeció, alegadamente, al cierre del vertedero municipal y a la privatización del servicio de recogido y disposición de desperdicios sólidos, lo que acarrearía falta de trabajo. ▬ El Municipio preparó un plan de cesantías cónsono con las leyes y reglamentos ▬ el cual se llevó a cabo de la siguiente manera: el 11 de mayo de 1996, el Municipio publicó en los diferentes tablones de edictos de las dependencias municipales un listado con el tipo de nombramiento de los empleados a ser cesanteados en orden de antigüedad en el servicio; se preparó una lista para los empleados regulares y otra para los empleados transitorios y se les notificó mediante carta del Director de Personal del Municipio, el señor Jimmy Rosas, ▬ que tenían hasta el

15 de agosto de 1996, a las 4:00 p.m. para que corrigieran cualquier error en cuanto a su antigüedad. Durante este período, los recurrentes no hicieron trámite alguno para corregir los errores. Luego que transcurrió el término concedido para que los empleados presentaran evidencia de cualquier error en su lista de antigüedad, el Municipio hizo el listado de los empleados a ser cesanteados. Una vez que el Municipio preparó la referida lista, algunos empleados intentaron corregir los errores. ■

El 16 de mayo de 1996, el Alcalde de Guánica se reunió con los empleados del Departamento de Obras Públicas y Saneamiento y les orientó personalmente sobre el procedimiento de las cesantías que se estarían llevando a cabo en los próximos meses. A su vez, el Municipio negoció con la compañía privatizadora para que le diera oportunidad de trabajo y preferencia a los empleados cesanteados y los citó a una reunión; algunos de los que asistieron fueron reclutados por la compañía, otros no aceptaron la oferta de trabajo. ■

El 29 de agosto de 1996 el Municipio le envió una carta a cada empleado que iba a ser cesanteado, en la cual se le indicaba el desglose de vacaciones y de licencia de enfermedad acumuladas. Finalmente, se procedió a cesantear a los empleados transitorios dentro de las clasificaciones de obreros, conductores y conductores de equipo pesado, como también a los empleados de carrera de menor antigüedad. ■ Los empleados que fueron cesanteados se incluyeron en unas listas de reingreso con el propósito de garantizarles que si el Municipio tenía que reclutar personal dentro de esas clasificaciones, ellos tendrían prioridad.

## II

Es doctrina firmemente establecida que los procedimientos y decisiones ante un organismo administrativo tienen a su favor una presunción de regularidad y corrección que debe ser respetada mientras la parte que los impugne no produzca evidencia suficiente para derrotarlas. *Misión Industrial de P.R. v. Junta de Planificación,* ___ D.P.R.___, **98 J.T.S. 79,** a la pág. 1159; *Misión Industrial v. Junta de Planificación,* ___ D.P.R.___, **97 J.T.S. 34,** a la pág. 728; *Facultad para las Ciencias Aplicadas; Inc. v. Consejo de Educación Superior,* ___ D.P.R.___, **93 J.T.S. 88,** a la pág. 10783; *Catalytic Ind. Maint. v. F.S.E.,* 121 D.P.R. 98, 102 (1988); *Henríquez v. Consejo Educación Superior,* 120 D.P.R. 194, 210 (1987); *M. & B.S., Inc. v. Depto. de Agricultura,* 118 D.P.R. 319, 331 (1987).

Como regla general, los tribunales miran con deferencia las determinaciones de hechos y las interpretaciones de la ley cuya administración le fue encomendada por la Legislatura, efectuadas por las agencias administrativas. Se presume que la agencia posee un conocimiento especializado en los asuntos que le han sido encomendados, por lo que la función de un tribunal revisor se limita a determinar si la interpretación o actuación administrativa fue razonable. *Rivera Rentas v. A & C Dev. Corp.,* ___ D.P.R.___, **97 J.T.S. 143,** a la pág. 344; *Metropolitana S.E. (ATRIUM PLAZA) v. A.R.P.E.,* ___ D.P.R.___, **95 J.T.S. 39,** a la pág. 767. Por esta razón debemos ser cautelosos en intervenir con dichas determinaciones. *Metropolitana S.E. (ATRIUM PLAZA) y otros v. A.R.P.E., supra; Fuentes v. A.R.P.E.,* ___ D.P.R. ___ (1993); **93 J.T.S. 165,** a la pág. 11385, *Viajes Gallardo v. Homero Clavell,* 131 D.P.R. 275, 290 (1992).

La Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, Ley Núm. de 12 de agosto de 1988, 3 L. P.R.A. sec. 2175, trata sobre el alcance de la revisión judicial y en lo que concierne a las determinaciones de hechos de la agencia establece que las mismas serán sostenidas por el tribunal si se basan en evidencia sustancial que obra en el expediente administrativo.

Reiteradamente se ha resuelto que para que un tribunal pueda decidir que la determinación de una agencia no está basada en evidencia sustancial, es necesario que el recurrente apunte y demuestre que existe otra prueba en el récord que claramente reduce o menoscaba el peso de tal evidencia, hasta el punto que el tribunal pueda concluir que la agencia fue arbitraria y que su dictamen no estuvo justificada por una evaluación justa de la prueba que tuvo ante su consideración. *Hilton Hotels v. Junta de Salario Mínimo,* 74 D.P.R. 670, 686 (1953).

La presunción de corrección y regularidad de las determinaciones de hechos y los remedios ordenados por un organismo administrativo en el ejercicio de su jurisdicción deben ser respetados por los tribunales. Debemos conferirle la mayor deferencia a las decisiones de los organismos administrativos, a menos que el recurrente que las cuestione demuestre que las mismas son arbitrarias. *Henríquez v. Consejo Educación Superior, supra; Murphy Bernabé v. Tribunal Superior,* 103 D.P.R. 693, 699 (1975); *Fuentes v. A.R.P.E., supra,* a la pág. 11385.

Mientras la parte que impugna las determinaciones de hechos del organismo y agencia no produzca suficiente evidencia para derrotarlas, éstas deben ser respetadas. *Misión Industrial de P.R. v. Junta de Planificación, supra,* a la pág. 1159; *Facultad para las Ciencias Sociales Aplicadas Inc. v. Consejo de Educación Superior, supra; Asoc. Drs. Med. Cui. Salud v. Morales,* 132 D.P.R. 567, 589 (1993).

En lo concerniente a la credibilidad que merecen los testigos, es necesario que el recurrente presente prueba sobre error manifiesto, pasión, prejuicio o parcialidad para interferir con la conclusiones de hechos a las cuales llegó la agencia recurrida. *In re: Mariano Ríos,* 112 D.P.R. 353, 361 (1982). La función de aquilatar la prueba es de los oficiales examinadores y de la agencia y no es atribución de este tribunal. *Robledo v. Comisión,* 95 D.P.R. 1 (1967). Los tribunales deben limitarse a indagar sobre la razonabilidad de las determinaciones administrativas y no deben sustituirlas por su propio criterio. *La Facultad para las Ciencias Sociales Aplicadas, Inc. v. C.E.S., supra; Silva v. Adm. Sistemas de Retiro,* 128 D.P.R. 256 (1991).

La evidencia debe ser considerada en su totalidad y debe ser aquella evidencia que una mente razonable pueda aceptar como adecuada para sostener una conclusión. *Associated Insurance Agencies Inc. v. Comisionado de Seguros,* ___ D.P.R. ___ (1997), **97 J.T.S. 142,** a la pág. 332.

Nuestro Reglamento enumera los criterios que tomaremos en consideración al decidir sobre la expedición de un auto de revisión, a saber: si el remedio y la disposición de la orden, resolución o decisión recurrida, a diferencia de sus fundamentos, son contrarias a derecho o producto de una actuación arbitraria, ilegal o irrazonable; si la decisión recurrida no está apoyada por evidencia sustancial; si la expedición del auto evita el fracaso de la justicia. Regla 66 del Reglamento del Tribunal de Circuito de Apelaciones, 4 L.P.R.A. Ap. XXII-A, R. 66. En el caso de marras no nos encontramos ante ninguna de estas situaciones.

Los recurrentes no nos han puesto en posición de intervenir con las determinaciones del foro administrativo, las cuales encuentran apoyo sustancial en los autos del caso. Veamos.

### III

En cuanto al primer señalamiento de error, es irrelevante en el caso ante nos si las cesantías fueron decretadas por falta de trabajo o por falta de fondos, ya que quedó establecido que el Municipio cumplió sustancialmente con la doctrina establecida en el caso de *Marina Calzada v. D.A.C.O., supra.* Así lo entendió la Oficial Examinadora, por lo que nuestra función revisora se limita a examinar si la J.A.S.A.P. actuó arbitraria o ilegalmente. Los recurrentes no nos han demostrado que deben prevalecer.

Además, de la transcripción de la vista se desprende que la Oficial Examinadora le ofreció amplia oportunidad a la representación legal de los recurrentes de presentar prueba y de refutar la presentada por la parte recurrida. La Oficial Examinadora prestó especial atención a la situación particular de los recurrentes. Tanto es así, que la Oficial en su informe recomienda que se corrijan ciertos errores en cuanto a las listas de antigüedad y la posición que ocupaban tres (3) de los recurrentes. A su vez, de la transcripción se desprende que los recurrentes tuvieron la oportunidad de utilizar como sus testigos a la Directora de Finanzas del Municipio, la Sra. Ilsa Rodríguez y al alcalde de Guánica y no lo hicieron.

En cuanto al segundo error, el Municipio venía obligado a cumplir con lo establecido en el caso de *Marina,*

*supra*, toda vez que así estaba plasmado en el plan de cesantías que se había preparado. Dicho plan, que se une como Apéndice VIII del Escrito de Revisión de los recurrentes, expresa en su Sección II, que: *"se incorpora en el mismo las normas y guías expresadas por nuestro Honorable Tribunal Supremo en el caso 82 J.T.S. 100, Marina Calzada v. Departamento de Asuntos al Consumidor (D.A.C.O.) [sic]"*. En su Sección VI, el plan recalca que la Rama Ejecutiva Municipal se considerará como un universo íntegro cuando sea necesario decretar cesantías de empleados por falta de fondos o falta de trabajo. De esta manera, también el Gobierno Municipal de Guánica incorporó a su plan de cesantías la doctrina que nuestro Tribunal Supremo adoptó en el caso de *Marina Calzada*, *supra*.

Además, dicho plan, en su Sección V, establece que:

*"Cuando el Alcalde, como autoridad nominadora de la Rama Ejecutiva del Gobierno Municipal de Guánica, determine que existan [sic] limitaciones presupuestarias para llevar a cabo los programas y rendir los servicios que el gobierno municipal debe ofrecer a la ciudadanía, podrá tomar las medidas que sean necesarias para conjurar la deficiencia presupuestaria. Entre otras cosas, podrá decretar cesantías conforme al principio de mérito y a los criterios de productividad, eficiencia y antigüedad en el servicio.*

*Podrá decretar cesantías, además, por falta de trabajo y por incapacidad física o mental, luego de evaluar y agotar las posibilidades de otorgar un acomodo razonable a cualquier empleado que tenga algún impedimento y lo solicite ... ".*

El Artículo 12.013 de la Ley Número 81 de 30 de agosto de 1991, mejor conocida como la Ley de Municipios Autónomos, 21 L.P.R.A. sec. 4563, dispone que:

*"Se podrán decretar cesantías, previo al establecimiento del plan para estos propósitos, en el servicio por las siguientes razones:*

*(a) Por falta de trabajo o de fondos.*

*Las cesantías se decretarán dentro de los grupos de empleados cuyos puestos tengan el mismo título de clasificación y considerando, dentro de cada grupo, el status de los empleados, su productividad, según reflejada por evaluaciones periódicas que requiere esta ley, sus hábitos de puntualidad y asistencia al trabajo y su antigüedad en el servicio público.*

*Los empleados de carrera deberán ser notificados, por escrito, de los procedimientos seguidos para decretar las cesantías y de los criterios utilizados. Se les notificará además, su derecho de apelación ante la Junta de Apelaciones del Sistema de Administración de Personal. Ninguna cesantía será efectiva a menos que se notifique con treinta (30) días de antelación a su efectividad."*

De la prueba desfilada quedó meridianamente claro que el municipio cumplió con sus deberes y obligaciones según se desprenden del plan de cesantías y del Artículo 12.013 de la Ley de Municipios Autónomos, *supra*, por lo que no existe razón para declarar que las cesantías son nulas, excepto aquellas que J.A.S.A.P. señaló en la resolución recurrida del 20 de mayo de 1996 y archivada en autos el 22 de mayo siguiente.

## IV

Por los fundamentos anteriormente expuestos, denegamos la expedición del auto solicitado.

Así lo pronunció y manda el Tribunal y lo certifica la Secretaria General.

**ESCOLIOS 99 DTA 163**

**1.** Además, se le ordenó al Municipio pagarle a éstos todos los haberes dejados de percibir a partir de la fecha de la cesantía hasta su reinstalación en el servicio. En el caso específico de Alcides Rosario Pérez, la reinstalación sería como chofer con status transitorio, nombramiento que desde un principio debió efectuarse en lugar del nombramiento del Sr. Radamés Cedeño Castro.

**2.** En la resolución mediante la cual denegó la reconsideración, la Junta corrigió el error en cuanto al señor Alcides Rosario Pérez, quien no había comparecido como recurrente. Sin embargo, se le reconoció su derecho a no ser cesanteado y se ordenó su retención como conductor con status transitorio en sustitución del señor Radamés Cedeño Castro, ya que la Oficial Examinadora había recomendado un remedio a favor de éste en su informe, no como recurrente sino como tercero afectado.

**3.** Dicha vista se llevó a cabo los días 5 y 24 de abril de 1996.

**4.** Según surge del Informe rendido por la Oficial Examinadora, la señora María I. Pérez Santiago, recurrente ante J.A.S.A.P., era la única que ocupaba un puesto transitorio como obrero.

**5.** Antes de decidir que iban a privatizar el recogido de desperdicios sólidos, habían negociado un contrato con el Municipio de Yauco para depositar la basura en el vertedero localizado en este municipio. Luego de haber pagado por un tiempo la tarifa establecida por el Municipio de Yauco, éste la subió y le notificó otros requerimientos de equipo y personal. Ante la imposibilidad de realizar los ajustes necesarios para hacer estos nuevos pagos, el Departamento de Finanzas, los consultores y la Autoridad Nominadora del Municipio, con la aprobación de la Asamblea Municipal, tomaron la decisión de privatizar el servicio de recogido de basura.

**6.** Además se adoptó la doctrina establecida por nuestro Tribunal Supremo en el caso de *Marina Calzada, supra*.

**7.** Quien testificó en la vista administrativa por parte de los recurrentes.

**8.** La evidencia presentada por los empleados fueron certificaciones de la Corporación Azucarera fechadas el 23 y 29 de agosto de 1994 en las que consta que ellos trabajaron como empleados irregulares. Los recurrentes presentaron certificaciones fueron los señores Adolfo García Ramos, William Vega García y Jesús A. Borrero Mercado.

**9.** Los siguientes empleados aceptaron la oferta de trabajo con la nueva compañía (BFI): Ismael Pardo Pino y la Sra. María I. Pérez Santiago. De los empleados que figuran como recurrentes en este recurso, Marcial Vázquez Cruz e Israel Sanabria, aceptaron la oferta de trabajo.

**10.** Con algunos de éstos se cometieron errores en las listas de antigüedad, por lo que la Oficial Examinadora que presidió la vista administrativa lo subsanó recomendándole a la Junta que le ordenara al Municipio corregir dicho error. A saber, los señores Clemente Vázquez Lugo, Gabriel Casiano Carbonell y Cristóbal Rivera Vega.